2005 SD 36

**Floyd J. STANGA and Judy K. Stanga, Plaintiffs and Appellants,**

v.

**Larry HUSMAN and Vicki Husman, d/b/a Hurkimer Development, Defendants and Appellees.**

No. 23252.

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 2005.

Decided March 16, 2005.

Michael A. Henderson, Shawn M. Nichols of Cadwell, Sanford, Deibert & Garry, Sioux Falls, South Dakota Attorneys for plaintiffs and appellants.

Ronald A. Parsons, Jr., of Johnson, Heidepriem, Miner, Marlow and Janklow, Sioux Falls, South Dakota Attorneys for defendants and appellees.

SABERS, Justice.

[¶ 1.] Floyd and Judy Stanga (Stanga) own a cabin on Lake Madison. Access to the property is provided via an easement across property owned by Larry and Vicki Husman (Husman). In 2000, Husman began to develop the property and partially relocated the access road. Stanga claims that Husman's unilateral alteration of the road impedes access to his property. Stanga filed suit seeking a declaratory judgment regarding the parties' respective rights. The trial court granted Husman's motion for summary judgment. Stanga appeals and we affirm.

### Facts

[¶ 2.] Stanga owns a lake lot that borders Lake Madison, which is located in Lake County. The property is located on the west end of Lake Madison in the area commonly known as "Marr's Beach." Stanga has a seasonal cabin on the proper-

ty. Access to the Stanga property (the dominant tenement) from Highway 19 is provided via an easement across property owned by Husman (the servient tenement). The express easement, dated October 30, 1954, provides a perpetual easement for the purpose of ingress and egress to the land now owned by Stanga. The express easement fails to provide the exact dimensions or location of the easement and simply refers to the "existing road."

[¶ 3.] At the time the easement was recorded, the "existing road" consisted of a one-lane path located on an old railroad right-of-way that ran from Highway 19 across a slough area to the property now owned by Stanga. The access road was not wide enough for two cars to pass side by side and, depending on the time of year and weather conditions, the road varied slightly from side to side. Eventually, a gravel road was constructed to provide better access. Over the next four decades, the placement and dimensions of the gravel road varied as improvements were made to it. Eventually it was widened to a two-lane road. It is unclear whether the improved gravel access road coincided with the original "existing road."

[¶ 4.] In 2000, shortly after the servient tenement was purchased by Husman, the property was developed into a planned community called "Sunset Harbor." The project includes several condominiums and townhouses, a clubhouse, and a swimming pool. As part of the development efforts, modifications to the access road were made in the spring of 2001. The road was partially relocated creating two new corners and then paved. The resulting altered route of the access road is the source of conflict between these two parties. Stanga asserts that Husman's unilateral alteration of the access road is inconsistent with the recorded easement and unreasonably impedes access to his property.

[¶ 5.] In June, 2003, Stanga filed an action seeking a declaratory judgment regarding the parties' respective rights as to the easement. Both parties filed motions for summary judgment. Circuit Court Judge Tim Tucker granted Husman's motion. Stanga appeals and we affirm.

## Standard of Review

[¶ 6.] In reviewing a trial court's order granting a motion for summary judgment, "[w]e will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided." *Flugge v. Flugge*, 2004 SD 76, ¶ 5, 681 N.W.2d 837, 839–40 (citing *Luther v. City of Winner*, 2004 SD 1, ¶ 6, 674 N.W.2d 339, 343). "We view all reasonable inferences drawn from the facts in the light most favorable to the non-moving party." *Id.*

[¶ 7.] **Whether the trial court erred in granting summary judgment in favor of Husman.**

[¶ 8.] Stanga argues that Husman was not entitled to unilaterally alter and relocate the easement. In the alternative, Stanga asserts that there are genuine issues of material fact.

[¶ 9.] The owners of a servient tenement are "entitled to make *reasonable changes* to the servient estate so long as they did not unreasonably interfere with the dominant tenement owners' use of the easement." (Emphasis in the original). *Burkhart v. Lillehaug*, 2003 SD 62, ¶ 11, 664 N.W.2d 41, 43 (citing 25 AmJur (2d) Easements & Licenses § 76 (2002)). The Restatement (Third) Property (Servitudes) § 4.8 (2000) provides in pertinent part:

Except where the location and dimensions are determined by instrument or circumstances surrounding creation of a servitude, they are determined as follows:

. . .

(3) *Unless expressly denied by the terms of an easement,* as defined in § 1.2, the owner of the servient estate is entitled to make *reasonable changes* in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not

(a) significantly lessen the utility of the easement;

(b) increase the burdens on the owner of the easement in its use and enjoyment; or

(c) frustrate the purpose for which the easement was created.

(Emphasis added).

[¶ 10.] Here, the original instrument establishing the easement does not provide the exact location or dimensions of the easement, nor does it specify the circumstances surrounding the easement's creation. The only reference to location was to the "existing road." Moreover, the recorded easement contained no express prohibition on relocation. Therefore, as the owner of the servient tenement, Husman is allowed to make unilateral modifications to the location of the easement, but only if those modifications are *reasonable* and do not significantly lessen the utility of the easement, increase the burdens on the owner of the dominant tenement, or frus-

trate the purpose for which the easement was created. *Burkhart,* 2003 SD 62, ¶ 11, 664 N.W.2d at 43; RESTATEMENT (THIRD) PROPERTY (SERVITUDES) § 4.8 (2000).

[¶ 11.] The changes Husman made have been at his own expense and for legitimate planning and development purposes. The plans were properly submitted to and approved by the Lake County Planning and Zoning Commission and the Lake County Commission.[1] The access road has been significantly improved in that it is now a hard surface road, built according to standard engineering practices for municipal streets and developments. According to Husman's engineer, the road is fully traversable by any vehicle that would normally travel a city street, including a standard 55–foot tractor/trailer.[2] Additionally, lighting pedestals have been installed along the roadway and Husman intends to eventually install street lights so that the road will be fully illuminated from Highway 19 to Stanga's property.

[¶ 12.] Stanga has failed to submit any affidavits or evidence to support his assertion that the improved roadway impedes access to his property. To the contrary, the depositions of both Floyd and Judy Stanga indicate that they are not being denied access to their property. Furthermore, when pressed in his deposition as to

1. The record indicates Mr. Stanga was personally notified of the proposed planning and zoning changes regarding Sunset Harbor development and attended at least one Lake County Planning and Zoning Commission meeting in which the proposed changes were discussed. The only concern Mr. Stanga raised regarding the proposed roadway plat was whether the bridge would be designed and constructed in such a way as to allow all types of vehicles to cross it. After being assured that this would be the case, he indicated no further objections.

2. This was determined by Jon Brown, a professional engineer, who submitted an affidavit in support of Husman. Stanga nonetheless asserts that due to the turns in the access road, no one would be able to get a 40–foot trailer to his property. He bases this assertion on an alleged comment that his son, who is a contractor, made to him. However, Stanga's son was never deposed nor did Stanga offer any affidavits or other credible evidence as to these contentions. Furthermore, when asked if either he or his son ever attempted to take a 40–foot trailer across the access road, Stanga responded in the negative.

how he is inconvenienced by the new access road, Mr. Stanga testified in part:

Q: Other than your desire to have this road straight for the reasons you've said, what other inconveniences have you suffered because of this road and are suffering today?

A: *The payment to my attorney.*

(Emphasis added).

[¶ 13.] SDCL 15–6–56(e) provides in pertinent part:

When a motion for summary judgment is made and supported as provided in § 15–6–56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15–6–56, must set forth specific facts showing that there is a genuine issue for trial.

See also *Gehrts v. Batteen*, 2001 SD 10, ¶ 12, 620 N.W.2d 775, 779 ("[P]roof of a mere possibility is never sufficient to establish a fact."); *Estate of Elliott v. A & B Welding Supply Company, Inc.*, 1999 SD 57, ¶ 16, 594 N.W.2d 707, 710 ("When challenging a summary judgment, the nonmoving party 'must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.' ").

[¶ 14.] Husman has shown that the modifications to the easement were reasonable. Furthermore, Stanga has not set forth specific facts through affidavits or other credible evidence to support his allegations that there are genuine issues of material fact whether the modifications lessen the utility of the easement, increase the burdens on him in the use and enjoyment of the easement, or frustrate the purpose for which the easement was created.

[¶ 15.] Therefore, it has not been shown that the trial court erred in granting Husman's motion for summary judgment and we affirm.

[¶ 16.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.