#23728, #23729-aff in pt, rev in pt & rem-DG

**2006 SD 45**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MARC A WEITZEL, M.D.,                    Plaintiff and Appellee,

v.

SIOUX VALLEY HEART PARTNERS,
a/k/a HEART PARTNERS OF SIOUX
VALLEY, a South Dakota Corporation,
and SIOUX VALLEY PHYSICIAN
PARTNERS, a South Dakota Corporation,    Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE STUART L. TIEDE
Judge

\* \* \* \*

JAMES E. MOORE of
Woods, Fuller, Shultz & Smith, PC
Sioux Falls, South Dakota                Attorneys for plaintiff
                                         and appellee.


ROBERTO A. LANGE
ERIC C. SCHULTE of
Davenport, Evans, Hurwitz
 and Smith, LLP
Sioux Falls, South Dakota                Attorneys for defendants
                                         and appellants.

\* \* \* \*

ARGUED MARCH 21, 2006


OPINION FILED **05/10/06**

#23728, #23729

GILBERTSON, Chief Justice

[¶1.]      Sioux Valley Hospital and Sioux Valley Heart Partners (hereinafter "SVH"), appeal from an order granting the plaintiff's, Marc Weitzel, M.D. (hereinafter Weitzel), motion for summary judgment on a breach of contract claim. SVH also appeals the circuit court's declaratory judgment that loans it made to Weitzel were not enforceable under the prevention doctrine.  By notice of review, Weitzel appeals the circuit court's dismissal of his fraud claim for lack of sufficient probative evidence.  We affirm that portion of Issue 1 granting Weitzel summary judgment on the existence of an employment contract, but reverse for trial as to whether there was a breach of that contract.  We also reverse and remand for trial on Issue 2 as to any obligation Weitzel had to SVH on certain loans it made to him. We affirm the circuit court on Issue 3.

**FACTS AND PROCEDURE**

[¶2.]      Weitzel was hired by SVH in Sioux Falls, South Dakota, as an interventional cardiologist with a starting date of August 1, 1999.  The parties signed a Staff Physician Agreement on July 2, 1999 ("1999 Staff Physician Agreement"), which guaranteed Weitzel a salary of not less than $325,000 for the first two years of his employment.  The "1999 Staff Physician Agreement" included a $13,000 loan for medical school loan repayment and an incentive loan of $37,000 made by SVH to Weitzel.  The loans were secured by a demand note and required repayment in twenty-four monthly installments; each monthly installment payment would be forgiven as it came due as long as Weitzel continued to work for SVH for twenty-four months.  The "1999 Staff Physician Agreement" also allowed Weitzel to take a twelve-month sabbatical after two years of employment in order to

-1-

participate in a fellowship training program in interventional cardiology. Either party could cancel the Agreement with ninety days written notice. SVH had the option to pay Weitzel ninety days base pay in lieu of notice, and could terminate employment immediately for specified reasons, including good cause.

[¶3.]     The "1999 Staff Physician Agreement" was modified in February 2000, and Weitzel's salary was increased to $500,000 per year through January 2003. At that time, the "1999 Staff Physician Agreement" was also modified to require Weitzel to comply with a code of conduct based on complaints by patients, nurses and physicians about his abrupt and abrasive manner.

[¶4.]     Due to his dissatisfaction with the mentoring he was receiving in interventional cardiology, Weitzel began inquiring about fellowships in Ohio, Oklahoma and Minnesota as early as November of 1999, just three months after he began working at SVH. On April 20, 2000, Weitzel was notified he was accepted to the University of Minnesota Cardiovascular Division as a fellow in the interventional cardiology program with a starting date of August 1, 2000, at a salary of $44,666 for the year. SVH allowed Weitzel to take a leave of absence after one year of work at SVH in order to accept the fellowship despite the clause in the "1999 Staff Physician Agreement" that required him to complete two years of work before a sabbatical would be made available for such a fellowship.

[¶5.]     A few days after receiving notice of his acceptance into the fellowship program Weitzel requested and received a third loan for $189,000 from SVH.[1] The

---

1.     Weitzel maintains on appeal that SVH purchased his outstanding accounts receivable from his former practice in Oklahoma. SVH argued at the circuit

(continued . . .)

-2-

note called for repayment in thirty-six monthly installments, and was evidenced by a demand note. The $189,000 loan also was forgivable as long as Weitzel provided services to SVH for an additional thirty-six months after returning from his fellowship.

[¶6.]        On May 10, 2000, prior to leaving for his cardiology fellowship, Weitzel sold his home in Sioux Falls. On July 14, 2000, Weitzel signed another agreement with SVH ("July 14, 2000, Agreement"), that provided him with a $36,000 support loan for living expenses during the fellowship at the rate of $3,000 per month, with a forty-eight month repayment period. The support loan was structured as a separate forgivable loan evidenced by a demand note, for which each monthly installment payment would be forgiven as it came due as long as Weitzel remained employed at SVH. SVH also allowed Weitzel and his family to retain health insurance coverage through SVH during the one-year fellowship by paying monthly premiums.

[¶7.]        The "July 14, 2000, Agreement" also consolidated the previous notes, except the support stipend loan, into one note with a repayment schedule of forty-eight monthly installment payments due beginning September 1, 2001, through August 1, 2005. The "July 14, 2000, Agreement" provided for forgiveness of all loans in exchange for Weitzel's continued employment with SVH from August 1,

_____
(. . . continued)

court level that the loan was made at Weitzel's request in light of his concerns about recovering approximately $189,000 in outstanding accounts receivable from his previous place of employment. The circuit court found there was no evidence to indicate a purchase of Weitzel's accounts receivable and that the $189,000 was a loan as contended by SVH.

2001, until August 1, 2005. The "July 14, 2000, Agreement" also provided that Weitzel would return to employment at SVH after completing his fellowship in July 2001, at which time the parties would execute SVH's "then current physician staff agreement (the terms and conditions of which shall not be materially different than the Current [1999 Staff] Physician Agreement, except as mandated by law or regulation) with Physician for a position as an interventional cardiologist at an annual base salary rate of $500,000." The "July 14, 2000, Agreement" also included the following: "(a) the current [1999 Staff] Physician Agreement will terminate as of July 14, 2000; and (b) no loan forgiveness of any kind shall occur under the current Physician Agreement after July 14, 2000."

[¶8.] After Weitzel left for his fellowship, members of the cardiology group began hearing that referring physicians did not want Weitzel to see their patients, and intended not to make referrals to SVH if Weitzel remained with the group. In late 2000, early 2001, the cardiologists discussed their concerns with Michael Nickell, M.D. (Nickell), president of Sioux Valley Clinic, that Weitzel's abrasive and abrupt manner might harm the developing practice. Nickell made the decision that Weitzel would not return to the cardiology group upon completion of his fellowship.[2] However, no direct communication between Nickell and Weitzel ever occurred. Instead, Kim Patrick (Patrick), in-house counsel for SVH, communicated to Steven Sanford (Sanford), Weitzel's attorney, the group's feelings and Nickell's suggestion

---

2. It is undisputed in the record that Nickell and Kelby Krabbenhoft, CEO of Sioux Valley Hospital and Health System, were the only two SVH administrators with the authority to hire and fire physicians.

that Weitzel should consider looking for other employment. The communication took place via a telephone conversation in February 2001 and three letters between Patrick and Sanford in April and May 2001.

[¶9.]     Sanford stated during his deposition that he recalled Patrick saying during a telephone conversation that if Weitzel returned to SVH his employment would be terminated immediately. In his deposition, Patrick stated he did not recall making such a statement. A May 31, 2001, letter from Patrick to Sanford stated in part:

> As we discussed, certain of the Heart Partners physicians have made it known that they would strongly prefer not having Weitzel return to that practice group. This is not to say that Sioux Valley would necessarily terminate Weitzel's employment but does suggest that it would be in the best interest of both parties if Weitzel were to find another position prior to August 1, 2001. This would permit the parties to agree to a mutual termination of the employment portion of the Loan Agreement and Amendment to Staff Physician Agreement without penalty to either party.
>
> In your May 15 letter, you further indicated Weitzel's concern that his failure to return on said date would be deemed an event of default under his Loan Agreement and Amendment to Staff Physician Agreement. As stated (and contemplated by a mutual termination of the employment portion of that Agreement), Weitzel's failure to return would certainly not be deemed by Sioux Valley to be an event of default triggering damages liability to Sioux Valley. Weitzel would however, remain responsible for his loan commitments to Sioux Valley. A portion of those loans represented the costs of Weitzel's medical school expense or were otherwise used by Weitzel to further his medical education and training. As such, those loans benefited Weitzel directly by improving his skills, credentials and marketability for the balance of his medical career. Therefore, he should repay these loans.
>
> In sum, Sioux Valley is not terminating Weitzel's employment agreement at this time but is only offering Weitzel the opportunity to procure other employment without being deemed in breach of his employment contract with Sioux Valley.

Weitzel began seeking other employment opportunities in the spring of 2001, and was offered positions in Oklahoma practicing interventional cardiology on April 19, and 28, 2001.  He had accepted one of the positions in Oklahoma by the end of April.  Weitzel never made any payments on the SVH loans.

[¶10.]     Weitzel brought suit against SVH alleging breach of contract and breach of good faith and fair dealing.  He sought damages for breach of contract in the amount of ninety days base pay from SVH per the "July 14, 2000, Agreement."  Weitzel subsequently amended his complaint to allege fraud.  SVH denied any liability and counterclaimed for payment of the $241,583.36 in principal and interest outstanding on the loans.

[¶11.]     Both parties entered motions for partial summary judgment on the issues of the existence of an enforceable contract and breach, whether the monies extended to Weitzel were loans requiring repayment or compensation earmarked as loans for administrative purposes, and the issue of damages.  Weitzel also sought to amend his pleadings to include fraud.  In addition, SVH entered a motion seeking a protection order preventing Weitzel from taking depositions of certain SVH employees.

[¶12.]     After a hearing in July 2003 on the competing cross-motions for summary judgment, the circuit court granted Weitzel's motion as to the existence of an enforceable contract and his motion to amend his complaint to include a claim of fraud.  However, the motions for summary judgment on the breach of contract claim, the issue of loan versus compensation, and damages were denied by the circuit court as the issues required inferences to be made based on interpretation of

competing factual accounts. The circuit court also denied SVH's motion for a protection order barring the taking of certain SVH employees' depositions.

[¶13.]        Following discovery, both parties again moved for partial summary judgment on the issue of breach of contract. Both parties also requested a declaratory judgment on the enforceability of the $36,000 support note and the $189,000 demand note. Weitzel also entered a motion for partial summary judgment on his claim of breach of implied covenant of good faith and fair dealing, and on his claim of fraud and deceit. The circuit court granted Weitzel's motion for breach of contract, and his motion for summary judgment on the issue of the repayment of the loans. Damages on the breach of contract claim were awarded to Weitzel in the amount of $171,358.24, representing ninety days of base pay and pre-judgment interest. The circuit court held that Weitzel's obligation to pay the loans was forgiven and the demand notes were not enforceable due to SVH preventing Weitzel from returning to SVH and performing under the "July 14, 2000, Agreement."

[¶14.]        The circuit court then dismissed Weitzel's motion on the issue of breach of implied covenant of good faith and fair dealing, stating that the issue was moot after granting Weitzel's motion for summary judgment on the breach of contract claim. Finally, the circuit court granted SVH's motion for summary judgment on the claim of fraud and deceit due to Weitzel's failure to substantiate his allegations with sufficient probative evidence to show that SVH made the promise of performance without the intention to perform.

[¶15.] On appeal, SVH raises the following two issues:

1. Whether the circuit court erred when it granted Weitzel's motion for summary judgment on the breach of contract claim.

2. Whether the circuit court erred when it held the replacement demand note for $205,583.26 and the support loan demand note for $36,000 were unenforceable against Weitzel due to lack of default.

By notice of review, Weitzel raises the following issue:

3. Whether the circuit court erred when it dismissed Weitzel's fraud claim for lack of sufficient probative evidence.

## STANDARD OF REVIEW

[¶16.] Our standard of review on summary judgment requires this Court to determine whether the moving party has demonstrated the absence of any genuine issue of material fact and entitlement to judgment on the merits as a matter of law. SDCL 15-6-56(c). The circuit court's conclusions of law are reviewed de novo. Titus v. Chapman, 2004 SD 106, ¶13, 687 NW2d 918, 923 (citing Sherburn v. Patterson Farms, Inc., 1999 SD 47, ¶4, 593 NW2d 414, 416 (citing City of Colton v. Schwebach, 1997 SD 4, ¶8, 557 NW2d 769, 771)). However, all facts and favorable inferences from those facts must be viewed in a light most favorable to the nonmoving party. *Id.* (citing Morgan v. Baldwin, 450 NW2d 783, 785 (SD 1990)). We will affirm the circuit court's ruling on a motion for summary judgment when any basis exists to supports its ruling. Westfield Ins. Co., Inc. v. Rowe, 2001 SD 87, ¶4, 631 NW2d 175, 176 (citing Estate of Juhnke v. Marquardt, 2001 SD 26, ¶5, 623 NW2d 731, 732).

[¶17.] In order to prevail on a motion for summary judgment, the nonmoving party "must present specific facts showing that a genuine, material issue for trial

-8-

exists." Stoebner v. South Dakota Farm Bureau Mut. Ins. Co., 1999 SD 106, ¶6, 598 NW2d 557, 558 (quoting Weiss v. Van Norman, 1997 SD 40, ¶9, 562 NW2d 113, 115) (citations omitted). "A disputed fact is not 'material' unless it would affect the outcome of the suit under the governing substantive law in that a 'reasonable jury could return a verdict for the nonmoving party.'" South Dakota State Cement Plant Comm'n. v. Wausau Underwriters Ins. Co., 2000 SD 116, ¶9, 616 NW2d 397, 401 (quoting *Weiss,* 1997 SD 40, ¶11 n2, 562 NW2d at 116 n2 (quoting Parsons v. Dacy, 502 NW2d 108, 110 (SD 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 US 242, 248, 106 SCt 2505, 2510, 91 LEd2d 202 (1986)))).

[¶18.] "On appeal, this Court can read a contract itself without any presumption in favor of the trial court's determination." Icehouse, Inc. v. Geissler, 2001 SD 134, ¶7, 636 NW2d 459, 462 (quoting Thunderstik Lodge, Inc. v. Reuer, 1998 SD 110, ¶12, 585 NW2d 819, 822). Thus, the interpretation of a contract is a question of law, which is reviewed de novo. *Id.* (citing Mahan v. Avera St. Luke's, 2001 SD 9, ¶15, 621 NW2d 150, 154).

## ANALYSIS AND DECISION

[¶19.] **1. Whether the circuit court erred when it granted Weitzel's motion for summary judgment on the breach of contract claim.**

[¶20.] SVH argues the circuit court erred when it granted Weitzel's motion for summary judgment on the issue of the existence of an enforceable agreement, as the conduct of the parties indicated only an agreement to agree in the future and was therefore not enforceable as a contract. In the alternative, SVH argues that if an enforceable agreement did exist the circuit court erred when it

granted the motion for summary judgment, as breach is an issue of fact for the trier of fact to resolve.

[¶21.] **A. Existence of an enforceable agreement**

[¶22.] "A contract is an agreement to do or not to do a certain thing." SDCL 53-1-1. The existence of a valid contract is an issue of law to be determined by the court. *Werner v. Norwest Bank South Dakota, N.A.*, 499 NW2d 138, 141 (SD 1993) (citing *Mid-America Mktg. Corp. v. Dakota Indus.*, 289 NW2d 797 (SD 1980)). A contract may be either express or implied, but not both. SDCL 53-1-3. "An express contract is one, the terms of which are stated in words. An implied contract is one, the existence and terms of which are manifested by conduct." *Id.* "An express contract results when the parties mutually express an intent to be bound by specific terms and conditions." *Werner*, 499 NW2d at 141 (citing *Van Zee v. Witzke*, 445 NW2d 34 (SD 1989)). As we noted in *Setliff v. Akins*:

> A contract is implied in fact where the intention as to it is not manifested by direct or explicit words by the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used, or acts done by them, or other pertinent circumstances attending the transaction.

2000 SD 124, ¶12, 616 NW2d 878, 885 (quoting *Weller v. Spring Creek Resort, Inc.*, 477 NW2d 839, 841 (SD 1991) (quoting *Mahan v. Mahan*, 80 SD 211, 215, 121 NW2d 367, 369 (1963))).

[¶23.] "An agreement must be sufficiently definite to enable a court to give it an exact meaning." *In re* Estate of Eberle, 505 NW2d 767, 770 (SD 1993) (citing Deadwood Lodge No. 508 Benevolent and Protective Order of Elks of the United States of Am. v. Albert, 319 NW2d 823, 826 (SD 1982)). "However, absolute

certainty is not required; only reasonable certainty is necessary." *Id.* (citing 17A AmJur2d Contracts § 196 (1991)). If an agreement leaves open essential terms and calls for the parties to agree to agree and negotiate in the future on essential terms, then a contract is not established. *Werner*, 499 NW2d at 142 (citing Transamerica Equip. Leasing Corp. v. Union Bank, 426 F2d 273 (9thCir 1970)).

[¶24.] In the instant case, the circuit court concluded an enforceable implied employment contract existed. It based its holding on the conduct of the parties as it related to the "July 14, 2000, Agreement" that memorialized the consolidated demand notes and the support loan demand note, which it determined manifested the parties' assent to be bound to an employment contract beginning August 1, 2001. The circuit court then determined the terms of the implied employment contract were sufficiently definite to find that it was an enforceable contract. Specifically, the circuit court noted that the "July 14, 2000, Agreement" was executed with the understanding that Weitzel would return to SVH on or about August 1, 2001, as an interventional cardiologist with SVH at the rate of $500,000 per year, under terms and conditions that were to be materially similar to those in the parties' previous employment agreement.

[¶25.] SVH contends that an implied contract was not formed, but rather the parties had agreed to agree to contract at a later date once Weitzel returned from his sabbatical. As support for its contention, SVH argues that the "July 14, 2000, Agreement" relied upon by the circuit court did not contain terms for an employment contract that were sufficiently definite to enable the circuit court to give the implied contract an exact meaning. SVH further argues that essential

elements of the future employment contract remained to be negotiated, and therefore the contract was not sufficiently definite. It bases its argument on the language in the "July 14, 2000, Agreement," which provides that the future employment agreement to be signed in August 2001 would contain "terms and conditions of which shall not be materially different than the Current [1999 Staff] Physician Agreement, except as mandated by law or regulation." SVH argues that these future terms and conditions were unknown at the time of the "July 14, 2000, Agreement," as any changes due to new laws and regulations could not be known at the time the "July 14, 2000, Agreement" was executed. SVH also argues that the definition of the term "materially" was vague, uncertain and undefined, and Weitzel would most likely have wanted to renegotiate many of the terms included in the previous physician contract between the parties.

[¶26.] SVH's argument as to the lack of sufficient definiteness must fail. The "July 14, 2000, Agreement" and all affidavits and depositions make it clear that both parties had entered into the agreement with the intention that Weitzel would return to SVH on or about August 1, 2001, and would be compensated at the rate of $500,000 per year as an interventional cardiologist. SVH points to no specific essential terms missing from the parties' agreement. Changes in the relevant law and regulations pertaining to physician contracts would not have been a subject of negotiation between SVH and Weitzel, as those terms would be imposed upon both parties regardless of their preferences. Therefore, there were no terms essential for the parties to negotiate. All that was left was for any changes in the relevant law and regulations to be incorporated into a written contract and execution of the contract by the parties. Although SVH may have believed Weitzel would have

wanted to negotiate many of the terms included in the previous contract between the parties, there is no indication in the record that Weitzel was unsatisfied with any of the additional terms. In addition, SVH did not indicate any specific terms with which it was dissatisfied, and no additional terms were identified as remaining to be negotiated prior to August 1, 2001.

[¶27.] SVH next argues that the execution of the employment contract itself was one of the essential terms of the agreement. As support for its contention, SVH points to the language in the "July 14, 2000, Agreement," which states that an employment agreement will be executed by the parties on or about August 1, 2001.

[¶28.] SVH cites to *G.H. Lindekugel & Sons, Inc. v. Brezina Constr. Co.*, 83 SD 404, 408, 160 NW2d 121, 123 (1968), for the proposition that "if an intention is manifested in any way that legal obligations between the parties shall be deferred until the writing is made, the preliminary negotiations and agreements do not constitute a contract." While undoubtedly true, the instant case is materially distinguishable from *Lindekugel* in that the parties in that case engaged in protracted negotiations over almost five months in an attempt to come to an agreement as to the price of a construction subcontract and the materials to be used in the construction project. *See id.* 405-07, 160 NW2d at 121-22. More importantly, each offer and counteroffer contained a signature line for acceptance and none were ever signed by the offeree during the five months of negotiations. *Id.* at 410, 160 NW2d at 124.

[¶29.] In the instant case, the salary and the type of work to be done by Weitzel had already been negotiated and were reflected in the "July 14, 2000,

Agreement." All that remained for the parties to do was await the promulgation of changes in the applicable laws and regulations and then update the "1999 Staff Physician Agreement" to reflect any changes taking effect in 2001, the year the parties anticipated signing the contract. All other material or essential terms had been agreed upon, and nothing remained for the parties to negotiate. Therefore, the circuit court did not err when it determined an enforceable agreement existed between the parties that entitled Weitzel to return to SVH on or about August 1, 2001, as an interventional cardiologist under the then current staff physician agreement.

[¶30.]    **B.    Summary judgment on the breach of contract issue**

[¶31.]    "[T]he elements of breach of contract are: 1. An enforceable promise; 2. A breach of the promise; 3. Resulting damages." Guthmiller v. Deloitte & Touche, LLP, 2005 SD 77, ¶14, 699 NW2d 493, 498 (citing McKie v. Huntley, 2000 SD 160, ¶17, 620 NW2d 599, 603; Krzycki v. Genoa Nat'l Bank, 496 NW2d 916, 923 (Neb. 1993)). Whether a contract has been breached is a pure question of fact for the trier of fact to resolve. Rindal v. Sohler, 2003 SD 24, ¶13, 658 NW2d 769, 772 (citing Moe v. John Deere Co., 516 NW2d 332, 335 (SD 1994); C & W Enterprises v. City of Sioux Falls, 2001 SD 132, ¶19, 635 NW2d 752, 758; Harms v. Northland Ford Dealers, 1999 SD 143, ¶21, 602 NW2d 58, 63; Swiden Appliance v. Nat'l. Bank of S.D., 357 NW2d 271, 277 (SD 1984)). A breach of contract is defined as "[a] violation of a contractual obligation, either by failing to perform one's own promise or by interfering with another party's performance." Black's Law Dictionary 182 (7th ed 1999). "A breach may be one by non-performance, or by repudiation, or by

both." *Id.* (quoting Restatement (Second) of Contracts § 236 cmt. a (1981)). "A breach of contract caused by a party's anticipatory repudiation, *i.e.*, unequivocally indicating that the party will not perform when performance is due[,]" allows the nonbreaching party to treat the repudiation as an immediate breach of contract and sue for damages. *Id.* This type of breach is known either as an anticipatory breach or constructive breach. *Id.*

[¶32.]        In the instant case, the circuit court granted Weitzel's motion for summary judgment on the breach of contract claim. It did so by finding that Nickell's decision not to allow Weitzel to return to SVH was communicated to Patrick without nuance. The circuit court further determined that Patrick knew that Weitzel would not be permitted to return to SVH, and then delivered that message to Sanford, Weitzel's attorney.

[¶33.]        The time for performance of the employment contract was set for August 1, 2001. The series of conversations between the parties' attorneys occurred between February and May 2001, some three to six months before the time of performance.

[¶34.]        The circuit court concluded that Nickell's communication to Patrick was unequivocal. However, a genuine issue of material fact exists as to whether Patrick's communication to Sanford was an unequivocal indication that SVH did not intend to perform its contractual obligation. We therefore, reverse the circuit court's judgment and order granting Weitzel's motion for summary judgment on the issue of breach of contract and remand for trial on this issue.

[¶35.] **2. Whether the circuit court erred when it held the replacement demand note for $205,583.26 and the support loan demand note for $36,000 were unenforceable against Weitzel due to lack of default.**

[¶36.] The circuit court determined that SVH made it impossible for Weitzel to return to employment and therefore made it impossible for the loan forgiveness to occur under the "July 14, 2000, Agreement." The circuit court then determined that Weitzel's return to employment at SVH was a condition precedent to the repayment obligation. It then concluded that SVH's conduct of preventing Weitzel from returning to employment at SVH extinguished his obligation to repay the notes under the prevention doctrine, and that the notes were unenforceable. The circuit court further concluded that SVH's right to demand payment on the notes accrued only in the event of a default as defined by the "July 14, 2000, Agreement." Finally, the circuit court determined that because no event of default had occurred SVH was precluded from demanding payment of the notes. The circuit court then denied SVH's motion for summary judgment on the issue of repayment of the notes.

[¶37.] SVH argues on appeal that the circuit court erroneously applied the prevention doctrine when it determined that Weitzel's return to employment at SVH was a condition precedent to repayment of the loans. It further argues that repayment was not triggered exclusively by one of the five default events listed in the "July 14, 2000, Agreement."

[¶38.] This Court previously defined a condition precedent in *Johnson v. Coss*:

> A condition precedent is a contract term distinguishable from a
> normal contractual promise in that it does not create a right or

-16-

> duty, but instead is a limitation on the contractual obligations of the parties. A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. If the condition is not fulfilled, the right to enforce the contract does not come into existence.

2003 SD 86, ¶13, 667 NW2d 701, 705-06 (quoting 13 Richard A. Lord, Williston on Contracts, § 38:1 (4th ed 2000)) (citation omitted). A condition precedent may be created either expressly by the language in the parties' agreement, or by a term supplied by the court. Restatement (Second) of Contracts § 226 (1981). However, conditions precedent are not favored by courts. 17A AmJur2d Contracts § 460 (2005). In the absence of plain, unambiguous language or necessary implication, courts generally will interpret conditions as stipulations rather than conditions precedent that could trigger forfeiture. *Id.* The document as a whole must be examined and it must be determined that the intent of the parties was to pre-agree that the happening or nonoccurrence of the stated event after the contract becomes binding would cause the contract to terminate without further duties or obligations on either party. 17A AmJur2d Contracts § 464 (2005).

[¶39.]	Generally, a contract will be unenforceable when it contains a condition precedent that fails to occur. *Johnson*, 2003 SD 86, ¶13, 667 NW2d at 705 (quoting Farmers Feed & Seed, Inc. v. Magnum Enterprises, Inc., 344 NW2d 699, 701 (SD 1984)). However, "[t]he prevention doctrine operates as an exception to the general rule that one has no duty to perform under a contract containing a condition precedent until the condition occurs." *Id.* ¶15, 667 NW2d at 706 (quoting Williston, § 39:4) (citation omitted). Under the prevention doctrine, when a party to

the contract hinders the occurrence of a condition precedent, that condition is waived. *Id.* "Whether interference by one party to a contract amounts to prevention so as to excuse performance by the other party and constitute a breach by the interfering party is a question of fact to be decided by the jury under all of the proved facts and circumstances." *Id.* (quoting Williston, § 39:3).

[¶40.]	The circuit court determined that Weitzel's continued employment throughout the forty-eight month term of the demand note was a condition precedent to enforcement of the loan obligation, and that SVH's breach of the "July 14, 2000, Agreement" prevented Weitzel from performing under the contract. However, because we reverse and remand on Issue 1, we must reverse and remand on Issue 2 as there must be a determination as to the issue of breach before Issue 2 can be addressed. On remand, the circuit court is referred to this Court's opinion in *Johnson*, 2003 SD 86, ¶15, 667 NW2d at 706-07, for proper application of the prevention doctrine.

[¶41.]	**3.	Whether the circuit court erred when it dismissed Weitzel's fraud claim for lack of sufficient probative evidence.**

[¶42.]	The circuit court dismissed Weitzel's claim for fraud under SDCL 53-4-5 and deceit under SDCL 20-10-1 for failure to "substantiate his allegations of fraud and deceit with sufficient probative evidence to show that [SVH] made a promise of employment without an intention of performing." Weitzel argues that the circuit court erred in its dismissal of the claim, as sufficient evidence was brought forward to submit the claim to a jury.

[¶43.] SDCL 53-4-5 provides in relevant part:

Actual fraud in relation to contracts consists of any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract: …(4) A promise made without any intention of performing it[.]

SDCL 20-10-1 provides: "[o]ne who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

[¶44.] In order to survive a motion for summary judgment on the claim of fraud and deceit, Weitzel, as the nonmoving party, was required to "set forth specific facts showing that there is a genuine issue for trial." *See* SDCL 15-6-56(e). The nonmoving party "may not rest upon the mere allegations or denials of his pleadings." Stanga v. Husman, 2005 SD 36, ¶13, 694 NW2d 716, 720 (quoting SDCL 15-6-56(e)). It is not sufficient for the nonmoving party to present evidence that would permit a finding in his favor on mere speculation, conjecture, or fantasy. *Id.* (citing Estate of Elliott v. A & B Welding Supply Co., Inc., 1999 SD 57, ¶16, 594 NW2d 707, 710). "Proof of a mere possibility is never sufficient to establish a fact." Gehrts v. Batteen, 2001 SD 10, ¶12, 620 NW2d 775, 779 (quoting *Estate of Elliott*, 1999 SD 57, ¶16, 594 NW2d at 710).

[¶45.] Weitzel contends that the two SVH administrators with hiring authority, Nickell and Krabbenhoft, were aware in February 2000, five months before the "July 14, 2000, Agreement" was signed, of the abrasive personality characteristics exhibited by and conflicts created by Weitzel. Next, Weitzel notes that the only reasons given by Nickell and other SVH witnesses in deposition for

his dismissal were his abrasive personality and past conflicts. Therefore, Weitzel contends this knowledge of his character and conflicts constituted sufficient evidence to show that SVH did not intend to allow Weitzel to return to employment at SVH at the time the "July 14, 2000, Agreement" was signed.

[¶46.] Weitzel's argument must fail, as there was one fact unknown to Nickell and Krabbenhoft at the time the "July 14, 2000, Agreement" was signed. It was not until late January or early February 2001 that the SVH heart program physicians expressed their desire to Nickell that Weitzel not return. Nickell and Krabbenhoft were aware of discord between Weitzel and several referring physicians and nursing staff at SVH. However, neither Nickell nor Krabbenhoft were aware of the level of discontent among the SVH heart program physicians with Weitzel's anticipated return when the "July 14, 2000, Agreement" was signed.

[¶47.] There is nothing in the record to suggest that Nickell or Krabbenhoft intended to enter into the contract for Weitzel's return without an intention to perform. Nickell stated in his deposition that his most important consideration once he was informed of the feelings and desires of the other heart program physicians was to protect and grow SVH's fledgling heart program. Nickell then left it up to Patrick to resolve the contract issues with Weitzel. Deposition testimony, the letter from the heart program clinic managers on behalf of the physicians to SVH administration dated February 28, 2001, and Weitzel's brief all indicate that the level of dissatisfaction among the heart group physicians was revealed while Weitzel was away at his fellowship.

[¶48.] There are no disputed facts within the record as to when Weitzel demonstrated an abrasive character and inappropriate patient and staff

interaction. There is also no dispute in the record as to when the heart physicians' desire to not have Weitzel return was revealed to Nickell and Krabbenhoft. Therefore, the circuit court did not err when it granted SVH's motion for summary judgment on the claim of fraud and deceit.

[¶49.] On Issue 1, we affirm the trial court on the existence of an employment contract but we reverse and remand for trial on the issue of a purported breach of that contract. We also reverse and remand for trial on Issue 2, as to Weitzel's obligations under the demand notes. We affirm the circuit court on Issue 3.

[¶50.] KONENKAMP, ZINTER and MEIERHENRY, Justices, and ENG, Circuit Judge, concur.

[¶51.] ENG, Circuit Judge, sitting for SABERS, Justice, disqualified.