#24860-a-GIENAPP, Circuit Judge
**2009 SD 12**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

SAMINA GUL, M.D.,                                  Plaintiff and Appellant,

    v.

CENTER FOR FAMILY
MEDICINE and DR. EARL KEMP,          Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE WILLIAM J. SRSTKA, JR.
Judge

\* \* \* \*

SHAWN M. NICHOLS of
Cadwell, Sanford, Deibert & Garry, LLP          Attorneys for plaintiff
Sioux Falls, South Dakota                                  and appellant.

R. ALAN PETERSON
STEVEN J. MORGANS
DANA VAN BEEK PALMER of
Lynn, Jackson, Shultz & Lebrun, PC          Attorneys for defendants
Sioux Falls, South Dakota                              and appellees.

\* \* \* \*

ARGUED ON
September 29, 2008

OPINION FILED 2/25/09

#24860

GIENAPP, Circuit Judge

[¶1.]        Samina Gul, M.D. (Dr. Gul) commenced an action for breach of
contract, defamation, and violation of due process against the Center for Family
Medicine (CFM) and one of its physicians, Dr. Earl Kemp (Dr. Kemp).  The parties
filed cross motions for summary judgment, although Dr. Gul's motion was for
partial summary judgment as to liability on the contract claim.  The circuit court
ruled in favor of CFM and Dr. Kemp on the defamation, due process, and breach of
contract claims.  The circuit court also ruled that Dr. Gul was entitled to summary
judgment as to her last month of salary under the contract.  Dr. Gul appeals the due
process and breach of contract summary judgment rulings and we affirm.

FACTS AND PROCEDURE

[¶2.]        CFM is affiliated with the University of South Dakota Medical School.
In April 2004 Dr. Gul was accepted into CFM's medical residency program in the
area of family medicine.  Dr. Kemp, a family practice physician employed by CFM,
supervised the residency program.  Dr. Gul was accepted into the program on April
19, 2004, and signed a contract for the program on April 28, 2004.  The contract was
for a one-year term that was the first year of the three-year residency program.[1]
Pursuant to the contract, Dr. Gul was paid a stipend for her services.  Dr. Gul began
her residency with CFM on June 26, 2004.[2]

---

1.    There is no contractual guarantee that a contract will be offered for the
      second year of residency.  The three-year residency program consists of three
      separate one-year contracts.

2.    The term of the contract was from June 23, 2004, to June 30, 2005.  The
      annual compensation was $41,355.

[¶3.] Problems with Dr. Gul's work developed and Dr. Gul was advised on December 30, 2004, that she was receiving a Notice of Unsatisfactory Performance and was placed on probation. That document provided in part that there were concerns about Dr. Gul's professionalism, organizational skills, and problem-solving abilities. Additionally, there were concerns with Dr. Gul's proficiency in speaking and writing the English language.

[¶4.] On April 27, 2005, Dr. Gul was notified by CFM that her residency contract would not be renewed for another year. CFM provided Dr. Gul with a document titled Notice of Non-Renewal of Resident Contract for Dr. Gul (Notice of Non-Renewal) which explained the non-renewal decision. The document served as official notice that Dr. Gul's residency contract would not be renewed by CFM after June 30, 2005, and that she would not be receiving a certificate of completion for her first year of residency. The Notice of Non-Renewal referenced the granting of a remedial month. Dr. Gul was subsequently told to turn in her keys and badge, and her scheduled rotations were assigned to other residents. At that time Dr. Gul was informed by CFM that she would be paid through the month of May.

[¶5.] Dr. Gul was provided with the Residents Manual which was comprised of the various policies and guidelines pertinent to the residency program. The manual provided that if a resident was being considered for dismissal from the program, she could request a hearing before the Resident Oversight Committee (ROC) in order to contest the dismissal.

[¶6.] After receiving the Notice of Non-Renewal, Dr. Gul requested a hearing before the ROC, which was held a few weeks later. After the hearing, at

which Dr. Gul was represented by counsel, the ROC voted sixteen to one to approve the non-renewal decision. In accordance with the procedure set forth in the Residents Manual, Dr. Gul appealed the ROC's decision to the Graduate Medical Education Committee. Dr. Gul was granted a hearing before that Committee, which was comprised of seven physicians who supervise medical residents. The Committee heard evidence provided by Dr. Gul and her attorney, and the Committee ultimately affirmed the decision of the ROC. Dr. Gul then appealed the decision to CFM's Board of Directors, which affirmed the decision not to renew Dr. Gul's residency contract.

[¶7.] Dr. Gul commenced an action against CFM and Dr. Kemp for defamation, breach of contract, and due process violations. The circuit court granted summary judgment in favor of CFM and Dr. Kemp on those claims while simultaneously granting summary judgment in favor of Dr. Gul for her last month's salary, that being the month of June. Dr. Gul is appealing the circuit court's decision granting summary judgment in favor of CFM and Dr. Kemp on the issues of breach of contract and a claimed denial of due process. The summary judgment as to the defamation claim was not appealed.

## STANDARD OF REVIEW

[¶8.] This matter is before the Court on appeal from a grant of summary judgment. Summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

SDCL 15-6-56(c). "In reviewing a grant of summary judgment under SDCL 15-6-56(c) we must determine whether the moving party has demonstrated there is no genuine issue of material fact and [the moving party] is entitled to judgment as a matter of law." Hoglund v. Dakota Fire Ins. Co., 2007 SD 123, ¶7, 742 NW2d 853, 856. All reasonable inferences drawn from the facts must be viewed in favor of the nonmoving party and reasonable doubts should be resolved against the moving party. Wilson v. Great N. Ry. Co., 83 SD 207, 212, 157 NW2d 19, 21 (1968). "The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law." Butler Mach. Co. v. Morris Const. Co., 2004 SD 81, ¶5, 682 NW2d 773, 776 (quoting Chilson v. Kimbell Sch. Dist. No. 7-2, 2003 SD 53, ¶7, 663 NW2d 667, 669). "Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied" by the lower court. Wojewski v. Rapid City Reg'l Hosp., Inc., 2007 SD 33, ¶12, 730 NW2d 626, 631 (quoting Reed v. McKennan Hosp., 2000 SD 66, ¶8, 610 NW2d 782, 784). The construction of a written contract is a question of law for the Court to consider. Dirks v. Sioux Valley Empire Elec. Ass'n, 450 NW2d 426, 427-28 (SD 1990). Affirmance is proper if any basis exists which would support the circuit court's ruling. Breen v. Dakota Gear & Joint Co., Inc., 433 NW2d 221, 223 (SD 1988). "A disputed fact is not 'material' unless it would affect the outcome of the suit under the governing substantive law in that a 'reasonable jury could return a verdict for the nonmoving party.'" Weitzel v. Sioux Valley Heart Partners, 2006 SD 45, ¶17, 714 NW2d 884, 891 (quoting S.D. State

Cement Plant Comm'n v. Wausau Underwriters Ins., Co., 2000 SD 116, ¶9, 616 NW2d 397, 401).

ANALYSIS AND DECISION

ISSUE ONE

[¶9.]     **Whether there was a breach of the one-year residency contract.**

[¶10.]     "A contract is an agreement to do or not to do a certain thing."  SDCL 53-1-1.  The elements that must be met in a breach of contract claim are: (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages.  Guthmiller v. Deloitte & Touche, LLP, 2005 SD 77, ¶14, 699 NW2d 493, 498.

[¶11.]     The contract at issue provides that "CFM retains the right to terminate this contract at any time should the Resident, in the opinion of CFM, fail to act within his/her best professional capacity and ability, and commensurate with the highest standards of practice and ethics applicable to the Family Practice specialty."  The contract also references a Residents Manual that provides "rules, regulations, policies and procedures."  The pertinent language in the Residents Manual pertaining to dismissals states, "[w]hen a resident is being considered for dismissal, the Program Director or designee shall notify the resident, in writing, of the charges and of the proposed dismissal.  The resident may request a hearing before the ROC."[3]

---

3.     Although the residency program is a three-year program the contract is a one-year contract specifically stating that:  "The term of this agreement commences June 23, 2004 and terminates June 30, 2005.  It is understood that this contract is for a portion of a three year program."  Dr. Gul received payment for the entire term of the contract.  Dr. Gul had originally received payment for eleven months, but the circuit court's decision added the payment for the twelfth month with the indication that this was done

[¶12.] Dr. Gul contends that summary judgment was improper because CFM terminated her without a hearing prior to termination, in breach of the contract. However, the record shows otherwise.

[¶13.] The record demonstrates that Dr. Gul was notified in writing of the charges and of the proposed dismissal. On April 27, 2005, Dr. Gul received the Notice of Non-Renewal which summarized her unsatisfactory performance.[4] The record also reveals other circumstances, prior to the April 27, 2005, notice, where Dr. Gul received notice, feedback, and opportunities to be heard regarding her deficient performance. In that regard, Dr. Gul was given a Notice of Unsatisfactory Performance in December 2004 which outlined her unsatisfactory performance. She discussed the items in this document with Dr. Kemp and another physician. At this time she was also placed on probation. The Residents Manual indicates that Dr. Gul could have requested a hearing before the ROC upon receipt of this notice, but she did not do so. After Dr. Gul received the Notice of Unsatisfactory Performance, she continued to receive evaluations and feedback and was given copies of her performance reviews which showed inadequate performance in several areas. Furthermore, the Notice of Non-Renewal on April 27, 2005, did not act as

---

pursuant to discussions at the summary judgment hearing. The transcript of that hearing is not a part of the record before this Court.

4. The document listed several deficiencies including doubts about Dr. Gul's ability to independently develop differential diagnoses for complex patients and an inability to develop appropriate diagnostic and therapeutic plans. The document also noted Dr. Gul's problems in speaking and understanding verbal English and problems communicating in written English. Finally, the document expressed doubts about whether Dr. Gul would be able to "develop adequate skills in application of basic clinical knowledge to care for patients even with more clinical training."

immediate termination. The document states that Dr. Gul's "residency contract will not be renewed after June 30, 2005."

[¶14.] After the Notice of Non-Renewal on April 27, 2005, Dr. Gul did not perform any duties in connection with her first-year residency contract except for some minimal duties in connection with finishing uncompleted medical reports. There does exist a factual dispute as to whether or not Dr. Gul was told not to report to work by Dr. Kemp, or whether Dr. Gul did not show up for duties as instructed.[5] However, this factual dispute is not material to Dr. Gul's claims and as a consequence does not defeat summary judgment.[6] "A disputed fact is not 'material' unless it would affect the outcome of the suit under the governing substantive law in that a 'reasonable jury could return a verdict for the non-moving party.'" *Weitzel*, 2006 SD 45, ¶17, 714 NW2d at 891.

[¶15.] Dr. Gul was also provided all of the hearings outlined in the Residents Manual. A hearing before the ROC was held within a few weeks of Dr. Gul's request. After the hearing, during which Dr. Gul was represented by counsel, the ROC voted sixteen to one to approve the non-renewal decision. Dr. Gul then appealed the ROC's decision to the Graduate Medical Education Committee, which

---

5.  The assignment of duties or non-assignment of duties was solely at the discretion of CFM.

6.  It was at the time of this factual dispute that Dr. Kemp informed Dr. Gul that she would be paid through May 2005, but pursuant to the circuit court's decision she was ultimately paid through June 2005, which was the entire amount she was to be paid under the contract. No person may recover a greater amount in damages for the breach of an obligation than he could have gained by full performance on both sides absent statutory exemplary or penal damages. *See* SDCL 21-1-5; Nelson v. WEB Water Dev. Ass'n, Inc., 507 NW2d 691, 700 (SD 1993).

was comprised of seven physicians who supervise medical residents. The Committee heard evidence provided by Dr. Gul and her attorney, but ultimately affirmed the decision of the ROC. Dr. Gul then appealed the decision to CFM's Board of Directors, which also agreed with the decision not to renew Dr. Gul's residency contract.

[¶16.] Dr. Gul does not dispute that the contract was a one-year contract. Dr. Gul does not dispute that she has now been paid the entire stipend owed her for that one-year contract period. What Dr. Gul does contend is that the contract and Residents Manual provided for due process hearings prior to termination. However, the Notice of Non-Renewal of April 27, 2005, indicated that the residency will not be renewed after June 30, 2005. The notice also indicated that, "[n]either is it anticipated that you will be awarded a certification of completion of the first year." Dr. Gul claims the wording of the Residents Manual provides for an appeal from a proposed dismissal. The April 27, 2005, notice was a proposed dismissal as of June 30, 2005, not an April 27, 2005, dismissal, so it was a proposed dismissal. As a result, Dr. Gul's claim is without merit.

[¶17.] The circuit court was correct in finding that there were no genuine issues of material fact as to whether Dr. Gul was provided adequate notice of her poor performance prior to receiving the Notice of Non-Renewal. Additionally, Dr. Gul was provided all opportunities for review as outlined in the Residents Manual.

ISSUE TWO

[¶18.] **Whether Dr. Gul's due process rights were violated.**

[¶19.]     The Fourteenth Amendment to the United States Constitution and Article VI, Section 2 of the South Dakota Constitution provide a party a right to due process before being deprived of life, liberty, or property.  Generally, due process requires "notice and an opportunity to be heard."  Wuest v. Winner Sch. Dist. 59-2, 2000 SD 42, ¶25, 607 NW2d 912, 918.  Additionally, due process must be granted at a "meaningful time and in a meaningful manner."  Hollander v. Douglas County, 2000 SD 159, ¶17, 620 NW2d 181, 186 (quoting Schrank v. Pennington County Bd. of Comm'rs, 1998 SD 108, ¶13, 584 NW2d 680, 682).  However, this Court has found that dismissing a student for academic reasons does not necessitate a hearing. Delaney v. Heimstra, 288 NW2d 769, 772 (SD 1980) (citing Bd. of Curators of Univ. of Mo. v. Horowitz, 435 US 78, 89, 98 SCt 948, 955, 55 LEd2d 135 (1978)).

[¶20.]     The circuit court found that Dr. Gul was a student in CFM's residency program.  Dr. Gul argues that she should be considered an employee, and not a student, for purposes of the due process analysis.  To support this, Dr. Gul cites the fact that she was paid a salary of $41,355 for her services for the year under the residency contract.  CFM contends that Dr. Gul was a student enrolled in CFM's residency program.[7]

[¶21.]     The issue of whether a medical resident is considered a student or an employee is a matter of first impression before this Court, but has been addressed

---

7.     CFM and Dr. Kemp also assert that they are not state actors and, thus, no due process analysis is warranted.  However, the record does not indicate that this argument was presented to the circuit court and as a consequence it has been waived.  "An issue may not be presented for a first time on appeal." Schlumbohm v. City of Sioux Falls, 2001 SD 74, ¶22, 630 NW2d 93, 98.  Our function is that of review, therefore, "issues not presented to the trial court are not before us on appeal."  Chipperfield v. Woessner, 84 SD 13, 19, 166 NW2d 727, 730 (1969).

in other jurisdictions. A Minnesota court addressed this issue in *Ross v. University of Minnesota*, 439 NW2d 28 (MinnCtApp 1989). In *Ross*, a medical resident in the University of Minnesota's psychiatry program was dismissed because his work performance was below minimum standards and he lacked interpersonal skills. *Id.* at 30-31. The resident filed suit against the university alleging, among other claims, that the dismissal from the residency program had violated his due process rights. *Id.* The court in *Ross* found that a medical resident is a student for the purpose of reviewing a decision to dismiss him for academic reasons, and that holding otherwise "would be to threaten the autonomy of academic institutions to determine standards for the passing and failing of students." *Id.* at 33. The court further noted that dismissing a resident from a hospital-based residency should be treated the same as failing a graduate student for the inability to meet academic requirements. *Id.*

[¶22.] The Fifth Circuit Court of Appeals also addressed this issue in *Davis v. Mann,* 882 F2d 967 (5thCir 1989). In *Davis*, a dental resident in the University of Mississippi's dental residency program was dismissed for unsatisfactory academic performance. *Id.* at 971. The resident sued the university asserting that his due process rights had been violated. The court concluded that a dental resident should be considered a student rather than an employee:

> The residency program is distinct from other types of employment in that the resident's "work" is what is academically supervised and evaluated. It is well-known that the primary purpose of a residency program is not employment or a stipend, but the academic training and the academic certification for successful completion of the program.

*Id.* at 974. Other courts have agreed that a medical resident should be categorized as a student rather than an employee. *Regents of Univ. of Minn. v. United States,* 2008 WL 906799, at *6 (DMinn Apr. 1, 2008) (holding that residents are students, not employees subject to FICA taxes); *Halverson v. Univ. of Utah Sch. of Med.,* 2007 WL 2892633, at *11 (DUtah Sept. 28, 2007) (holding that medical residents are not considered employees and are entitled to lesser due process procedures than employees).

[¶23.] We agree that medical residents are students and not employees. The fact that Dr. Gul received a stipend does not alter the fact that she was participating in an academic program in order to receive academic certification. As a student, Dr. Gul is not entitled to the same due process protection as an employee.

[¶24.] In *Delaney v. Heimstra,* we held that a hearing is not required when a student is dismissed for academic reasons. 288 NW2d at 771. The *Delaney* Court followed the United States Supreme Court opinion in *Board of Curators of University of Missouri v. Horowitz,* 435 US at 89, 98 SCt at 955, and recognized that a hearing may be "useless or harmful in finding out the truth concerning scholarship." *Id.* at 771. In *Delaney*, we adopted the standard set forth in *Gaspar v. Burton*, 513 F2d 843 (10thCir 1975):

> [S]chool authorities, in order to satisfy Due Process prior to termination or suspension of a student for deficiencies in meeting minimum academic performance, need only advise that student with respect to such deficiencies in any form. All that is required is that the student be made aware prior to termination of his failure or impending failure to meet those standards.

#24860

*Id.* at 772. In adopting that standard, we held that an MBA student's procedural due process requirements were met when the student was notified of his academic deficiencies and when, after failing to meet the academic criteria, the MBA student was afforded the opportunity to have a request for special consideration reviewed by the MBA Committee. *Id.*

[¶25.]    Dr. Gul was provided with ample notice that she was not meeting the minimum academic performance required for the medical residency. In December 2004, Dr. Gul was given the Notice of Unsatisfactory Performance and was placed on probation. This notice detailed the concerns that CFM had with Dr. Gul's performance. Also, between January and April 2005, Dr. Gul was given copies of her performance reviews that showed her inadequate performance in several areas. Additionally, in April 2005, Dr. Gul was given a follow-up review that indicated that, while she was making some improvements, her performance still fell below what was expected of a first-year resident. Dr. Gul was afforded all due process to which a medical resident is entitled, and summary judgment was proper.

[¶26.]    GILBERTSON, Chief Justice, KONENKAMP and MEIERHENRY, Justices, concur.

[¶27.]    ZINTER, Justice, concurs specially.

[¶28.]    GIENAPP, Circuit Judge, for SABERS, Retired Justice, disqualified. ZINTER, Justice (concurring specially).

[¶29.]    I agree there is a genuine issue of disputed fact whether Dr. Gul was terminated on April 27, 2005, before she received her contractual right to a hearing. *See supra* ¶14. Defendants admitted the point at oral argument when they

-12-

conceded that at a minimum there was "confusion" over the matter. This Court notes that this dispute of fact was not material because Dr. Gul was paid for the balance of her contract. *Id*. n6. I write to address Dr. Gul's additional contention that the dispute of fact regarding termination was material to her claim for consequential damages.

[¶30.] Dr. Gul is mistaken because she sued in contract rather than tort, and therefore, she was not entitled to the consequential damages she claimed (collateral damages arising after her contract ended). Damages for breach of a definite term employment contract are generally limited to the lost wages that would have been earned until the end of the contract. Bad Wound v. Lakota Cmty. Homes, Inc., 1999 SD 165, ¶11, 603 NW2d 723, 726. Although Dr. Gul's claimed consequential damages may have been recoverable in tort, they were not recoverable in her suit for breach of contract. *See id*. ¶¶11-13, 603 NW2d at 726. Therefore, the dispute of fact regarding termination was not material to the issue of consequential damages.