**Richard H. BUBLITZ, Plaintiff and Appellant,**

**v.**

**The STATE BANK OF ALCESTER, a South Dakota State Bank, Defendant and Appellee,**

**and**

**Roger McKellips, Robert Boyt, Richard Plato, and Park Investment Company, Defendants.**

No. 14666.

Supreme Court of South Dakota.

Considered on Briefs April 12, 1985.

Decided June 12, 1985.

John P. Abbott of Abbott & Abbott, Brandon, for plaintiff and appellant.

Steven W. Sanford of Cadwell, Sanford & Deibert, Sioux Falls, for defendant and appellee.

HENDERSON, Justice.

### ACTION

This is a civil appeal taken by the plaintiff from a dismissal upon the merits per SDCL 15–6–41(b), entered after the presentation of plaintiff's evidence. We affirm.

### PARTIES

Plaintiff-appellant, Richard H. Bublitz, is a businessman/investor. Dakota Industries is a South Dakota corporation which manufactures sports and hunting outerwear. Robert Boyt and Richard Plato are the managers, officers, and major stockholders of Dakota Industries. The Line by

Dakota, Inc., hereinafter denominated The Line, is also a South Dakota corporation and a subsidiary of Dakota Industries. Its principals are also Boyt and Plato. The Line markets fashion ski wear manufactured by Dakota Industries. Terrence Mealy is an Iowa lawyer/investor and a personal friend of appellant Bublitz. Park Investment Co. is a factor for accounts receivable for The Line and is located in Des Moines, Iowa. Finally, defendants-appellees are Roger McKellips and The State Bank of Alcester (the latter we refer to as State Bank). McKellips is the president and a stockholder of State Bank which is a major financier and creditor of the two corporations and possesses various security interests or liens on their assets. McKellips was dismissed out of the lawsuit by the trial court and that dismissal has not been appealed.

### FACTS

This case involves the exchange of numerous business loans, promissory notes, and verbal and written agreements between the various parties outlined above. We limit our discussion to the relevant facts necessary to decide this case.

In the Spring of 1979, Bublitz made two loans to Dakota Industries, and in May of that year, proposed to lend Dakota Industries $50,000 and become involved in its management. This proposal was rejected by Dakota Industries.

By a document dated June 21, 1979, however, The Line proposed a similar loan and management arrangement which Bublitz accepted. This agreement required Bublitz to (a) loan The Line at least $50,000, (b) consult and advise the company, and (c) that State Bank "assign an interest in its existing 1st mortgage on all inventories of [The Line] to [Bublitz] as security for [the] loan." State Bank never accepted the proposal and Bublitz made the loan anyway.

In August 1979, Park Investment Co. purchased the accounts receivable of The Line under a factoring arrangement. Park Investment Co. began receiving the assigned accounts on August 31, 1979.

When these accounts were received, Park Investment Co. would forward a certain percentage of the money to State Bank and the latter would disburse the funds to The Line. State Bank kept none of the monies paid by Park Investment Co.

In November 1979, Bublitz sent to State Bank the document which triggered the present controversy. This agreement was prepared by Bublitz' lawyer/friend, Terrence Mealy. This document provides, inter alia:

This letter is to confirm an agreement between The Line, Inc., the Alcester State Bank, and you with respect to certain accounts receivable which have been assigned by The Line to Park Investment Co. of Des Moines, Iowa by The Line, Inc. You also understand that the Alcester State Bank has a first lien on these accounts receivable subject to the rights of Park Investment.

The Alcester State Bank has a security interest in the accounts receivable and agrees to pay out of the accounts receivable to you the sum of $56,250.00 which shall be collected in the following manner: the first $750,000 of accounts receivable which is paid to the Alcester State Bank from Park Investment Company will be paid to the Alcester State Bank; the next $56,250 shall be collected by the Alcester State Bank and shall be placed in trust to your account but not subject to withdrawal by you until January 2, 1980. This trust account shall be placed in an interest bearing account which would be mutually agreeable between us. If the money is not paid to you on January 2, 1980, it is understood that you will have additional charges against The Line.

"You" represents appellant Bublitz. It is dated November 30, 1979, and signed by Roger McKellips.

By June 1980, Bublitz had not received payment and he made written demand therefor. Dakota Industries and The Line went into bankruptcy and Bublitz initiated the present action on May 15, 1981.

## TRIAL/LOWER COURT DECISION

Trial was held on May 10 and 11, 1984, at the Minnehaha County Courthouse. Bublitz first testified, McKellips was then called as an adverse witness, and thereupon plaintiff-appellant (Bublitz) rested. Defendants State Bank and McKellips moved to dismiss under SDCL 15-6-41(b) whereupon the trial court granted defendants' motion. The trial court's rationale for granting defendants' motion to dismiss, as evidenced by its statements at trial and its Findings of Fact and Conclusions of Law dated May 31, 1984, was that the letter contract dated November 30, 1979, contained two conditions precedent to Bublitz' recovery, neither of which had been met. The first condition precedent found by the trial court was that Park Investment Co. must pay $750,000 under the accounts receivable factoring arrangement after the effective date of the contract, November 30, 1979. Second, that State Bank must be paid at least $750,000. Bublitz stipulated at trial that Park Investment Co. had paid less than $750,000 after November 30, 1979. From this dismissal upon the merits, Bublitz now appeals. Bublitz lists four legal issues for this Court to address but covers them under one argument. Appellee State Bank addresses a single issue and we deem this case to be decided by resolving one issue.

## ISSUE

DID THE TRIAL COURT ERR IN FINDING STATE BANK NOT OBLIGATED UNDER THE LETTER CONTRACT BECAUSE THE CONDITION PRECEDENT TO SUCH AN OBLIGATION DID NOT OCCUR? WE HOLD THAT IT DID NOT.

## DECISION

The parties initially argue the appropriate standard of review to be applied by this Court. Bublitz contends review by this Court is de novo because this case involves the trial court's interpretation of the contract. Bublitz cites *McCollam v. Littau*, 307 N.W.2d 144 (S.D.1981); *Kohlman v. Cahill*, 301 N.W.2d 664 (S.D.1981); and *North River Ins. Co. v. Golden Rule Constr., Inc.*, 296 N.W.2d 910 (S.D.1980), as authority for his contention. Appellee State Bank contends that since this was a dismissal upon the merits under SDCL 15-6-41(b), this Court reviews the findings of fact under the clearly erroneous standard and the conclusions of law under the "in error as a matter of law" standard. *See Taylor Oil Co. v. Weisensee*, 334 N.W.2d 27 (S.D.1983); *Sioux Valley Hospital Ass'n v. Bon Homme County*, 331 N.W.2d 78 (S.D.1983); *Wefel v. Harold J. Westin & Associates, Inc.*, 329 N.W.2d 624 (S.D. 1983).

Under either standard of review, this Court cannot interpret this contract as Bublitz advocates or rule that the trial court's interpretation was clearly erroneous.

Bublitz argues that the letter contract dated November 30, 1979, has retroactive effect to—or its operative date was—August 30, 1979, the date of the assignment to Park Investment Co., and that after the first $750,000 was paid to State Bank—whether State Bank retained the money to reduce principal or disbursed it to The Line—the next $56,250 was to be deposited in a trust account for it. Bublitz asserts his conclusions are only logical because the agreement speaks in past tense and does not state that State Bank has to retain the money or use it to reduce principal. Bublitz does concede, however, that State Bank's contentions, and those promulgated by the trial court, do have a certain amount of logic.

■ With the latter statement, this Court agrees. State Bank maintains the letter contract contained only one date, November 30, 1979. State Bank urges that, if the scrivener or the parties intended the letter contract to have retroactive effect, the contract should have contained a clause so stating. For this principle, State Bank cites *Viacom Int'l Inc. v. Tandem Productions, Inc.*, 368 F.Supp. 1264 (S.D.N.Y. 1974) and *American Cyanamid Co. v. Ring*, 248 Ga. 673, 286 S.E.2d 1 (1982).

This contract did not contain such a clause or statement and the only person to sign it, Roger McKellips, President of State Bank, testified at trial that he interpreted it to be effective as of November 30, 1979.* Having no retroactive clause, the contract will be given effect as of the date it is executed or delivered. *See Canaras v. Lift Truck Services, Inc.*, 272 Md. 337, 322 A.2d 866 (1974); *Cessna Finance Corp. v. Mesilla Valley Flying Service, Inc.*, 81 N.M. 10, 462 P.2d 144 (1969).

██ Having determined the trial court's ruling concerning the contract's effective date, i.e., November 30, 1979, not to be clearly erroneous and determining the effective date de novo ourselves, it is unnecessary to address the contentions surrounding the "$750,000 to be paid to State Bank" provisions. Bublitz stipulated at trial that the accounts receivable forwarded by Park Investment Co. after November 30, 1979, were less than $750,000. Deeming that the first condition precedent was not met, we need not address Bublitz' contentions concerning the second condition precedent. Bublitz cannot be elevated, in priority, over a secured lender, the State Bank, by the trial court's interpretation of this contract, as well as ours, under the facts and law of this case.

Accordingly, we affirm.

All the Justices concur.

WUEST, Circuit Judge, Acting as Supreme Court Justice, participating.

---

* McKellips was answering questions propounded by Bublitz' counsel.