2003 SD 86

**George D. JOHNSON and Johnson Ford Lincoln–Mercury, Inc., Plaintiffs and Appellees,**

v.

**Lawrence COSS, Defendant and Appellant.**

**No. 22556.**

Supreme Court of South Dakota.

Argued April 30, 2003.

Decided July 23, 2003.

702

Kenneth E. Barker, John W. Burke of Barker, Wilson, Reynolds & Burke, LLP, Belle Fourche, South Dakota, Attorneys for plaintiffs and appellees.

Robert B. Anderson of May, Adam, Gerdes and Thompson, Pierre, South Dakota, Attorneys for defendant and appellant.

ZINTER, Justice

[¶ 1.] Lawrence Coss entered into an agreement to purchase George Johnson's,[1] auto dealership. The agreement was conditioned on Ford Motor Company's transfer of its franchise from Johnson to Coss. After several months, Coss notified both Johnson and Ford that the agreement could not be completed because Coss could not meet Ford's franchise transfer requirements. Johnson subsequently commenced this action for breach of contract and breach of the covenant of good faith and fair dealing.[2] The circuit court granted summary judgment for Johnson reasoning that Coss's actions prevented Ford's transfer of the franchise. Coss appeals. Because we find material issues of disputed fact relating to the cause of the failure to transfer the franchise, we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

[¶ 2.] On January 7, 2000, Johnson and Coss entered into an Asset Purchase Agreement for the sale of Johnson Ford Lincoln–Mercury, Inc. The sale included the dealership assets, the real estate upon

---

1. Johnson contracted individually and as the sole shareholder of Johnson Ford Lincoln Mercury, Inc.

2. Johnson indicated that if the circuit court granted summary judgment on these two the- ories, the decision would dispose of Johnson's remaining counts. Because the circuit court granted summary judgment, we only consider the breach of contract related theories.

which the car business was located, as well as the inventory, parts, and other related items.

[¶ 3.] The agreement was expressly conditioned upon Ford Motor Company's approval of the transfer of the Ford franchise from Johnson to Coss. Paragraph 16 of the agreement provided:

All transactions described in this agreement are subject to the consent and approval of Seller's franchisor, Ford Motor Company, and any of its subsidiaries or member companies. Transfer, or written approval of transfer, of the Ford Lincoln–Mercury franchise, is a condition precedent to closing of the transactions herein. In the event the consent and approval of Ford Motor Company or any other entity necessary to approve and effectively transfer the Ford Lincoln–Mercury franchise to Purchaser is not obtained, then this transaction in its entirety and this agreement in its entirety is null and void.

Paragraph 17 of the agreement also conditioned the agreement on: "[r]eceipt of the consent and approval [sic] the Corporation's franchisor, Ford Motor Company, in regard to the transfer of the Corporation's Ford Lincoln–Mercury franchise to Purchaser[.]"

[¶ 4.] Coss hired Steven Grodahl, an attorney and CPA, to assist Coss with the franchise transfer. According to Grodahl's affidavit in opposition to Johnson's motion for summary judgment, Ford identified several requirements that Coss needed to satisfy before Ford would approve the transfer. Those requirements included an on site manager that was approved by Ford. That manager was required to demonstrate, to Ford's satisfaction, the ability to operate a dealership successfully. The manager was also required to own a substantial interest in the business.

[¶ 5.] Viewing the facts most favorably to Coss as we must do on summary judgment, Grodahl indicated that Ford would not approve Coss as the manager/co-owner. Because Ford would not transfer the franchise if Coss were the sole owner, Coss decided that the success of the agreement depended upon finding a manager willing to run the day-to-day operations of the dealership. That person would also have to acquire a substantial ownership in the business.

[¶ 6.] Mark Goodrich was identified as such a manager/co-owner. Originally, Coss proposed a 50/50 ownership arrangement with Goodrich and a joint capitalization of $1 million. However, Ford indicated that they required a majority owner. Pursuant to that requirement, Coss revised the plan so that he would own 50.1% of the dealership. In addition to the ownership requirements, Ford required that the potential owners develop a New Dealer Operating Plan, and that each owner submit personal and financial information. Ford further advised that it would require an initial capitalization of $1.476 million instead of the $1 million Coss had initially proposed.

[¶ 7.] Grodahl's affidavit indicates that despite Coss's attempts to comply with these requirements, Coss could not meet them. Although it is undisputed that Ford did not issue a written denial of the transfer after a formal request by Coss, Grodahl asserted that it became clear after several conversations with Ford representatives that they would refuse to approve the transfer to Coss if a formal request were made. Consequently, Grodahl sent letters to Ford and Johnson informing them that, because Coss could not meet Ford's requirements, the agreement was null and void under paragraph 16.

[¶ 8.] After receiving Grodahl's letter, Johnson commenced this action against

Coss. Johnson filed a motion for partial summary judgment on Count 1 (breach of contract) and Count 2 (breach of the covenant of good faith and fair dealing). Coss filed a cross motion for summary judgment. After a hearing, the circuit court granted partial summary judgment in favor of Johnson and denied judgment for Coss. The circuit court reasoned that: "the agreement was not performed and the transaction was not consummated according to its terms 'due to an act of the Purchaser,' and was not a result of the denial of the application by Ford Motor Co." Coss appeals questioning:

1. Whether the circuit court erred in finding that the failure of the parties to complete the agreement was due to an act of Coss thereby rejecting Coss's argument that the unsatisfied condition precedent barred Johnson's claims.

2. Whether the circuit court erred in failing to grant summary judgment to Coss, dismissing Johnson's complaint.

[¶ 9.] We conclude that genuine issues of material fact exist as to the cause of the failure to transfer the Ford franchise. Because this dispute of fact precludes summary judgment for both parties, we reverse and remand on Issue 1, and we affirm on Issue 2.

## STANDARD OF REVIEW

[¶ 10.] Our standard of review concerning the grant or denial of a summary judgment is well settled.

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and [established] entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably

to the nonmoving party[,] and reasonable doubts should be resolved against the moving party.... Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied.

*Braun v. New Hope Tp.*, 2002 SD 67, ¶ 8, 646 N.W.2d 737, 739 (quoting *South Dakota State Cement Plant Com'n v. Wausau Underwriters Ins. Co.*, 2000 SD 116, ¶ 9, 616 N.W.2d 397, 400–01).

## DECISION

[¶ 11.] **Summary judgment is precluded because there are material issues of disputed fact relating to the cause of the failure to consummate the agreement.**

[¶ 12.] The dispositive issue in this appeal is whether the condition precedent (Ford's approval of the franchise transfer) failed because of an act for which Coss was legally responsible, or because of a discretionary act of Ford Motor Co. Johnson argues that Coss is prevented from relying on the failed condition precedent because Coss failed to perform the acts reasonably necessary to obtain a transfer of the franchise. On the other hand, Coss argues that he made sufficient efforts to obtain Ford's approval, but that it became apparent he could not meet all of Ford's requirements. Coss contends that because the conditions imposed by Ford could not be met, the condition precedent failed, and the failed condition bars Johnson's breach of contract claims.

[¶ 13.] "[I]t is a general principle of contract law that failure of a condition precedent ... bars enforcement of the contract." *Farmers Feed & Seed, Inc. v. Magnum Enterprises, Inc.*, 344 N.W.2d 699, 701 (S.D.1984) (further citations omitted). A condition precedent is a contract term distinguishable from a normal con-

tractual promise in that it does not create a right or duty, but instead is a limitation on the contractual obligations of the parties.

> A condition precedent is a fact or event which [sic] the parties intend must exist or take place before there is a right to performance.... A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor.... If the condition is not fulfilled, the right to enforce the contract does not come into existence.

13 Richard A. Lord, Williston on Contracts, § 38:1 (4th ed.2000), *see also Bublitz v. State Bank of Alcester*, 369 N.W.2d 137 (S.D.1985) (holding a contract unenforceable because a stated condition precedent failed to occur).

[¶ 14.] Ford held the ultimate right to determine if the condition precedent was fulfilled by approval of the franchise transfer. By affidavit opposing summary judgment, Grodahl stated that the terms and conditions imposed by Ford could not be met. However, Johnson argues, and the circuit court concluded, that under the prevention doctrine, the failure of the condition precedent was caused by Coss, and therefore, Coss should be prevented from relying on the unfulfilled condition.

[¶ 15.] "The prevention doctrine ... operates as an exception to the general rule that one has no duty to perform under a contract containing a condition precedent until the condition occurs." *Williston* § 39:4; *see also Moore Brothers Co. v. Brown & Root, Inc.*, 207 F.3d 717, 725 (4th Cir.2000). "[P]revention is similar to the concept of 'waiver by estoppel' in the context of excuses for nonperformance of contractual duties. An individual who prevents the occurrence of a condition may be said to be 'estopped' from benefiting from the fact that the condition precedent

to his or her obligation failed to occur." *Williston* § 39:7. As the Restatement (Second) of Contracts explains:

> Where a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing imposed on him ... may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence.... [N]on-performance of that duty when performance is due is a breach.... [I]t has the further effect of excusing the non-occurrence of the condition itself, so that performance of the duty that was originally subject to its occurrence can become due in spite of its non-occurrence.

Restatement (Second) of Contracts § 245 cmt. (a) (1981). Similarly, *Williston* explains that if a party to a contract hinders the occurrence of a condition precedent, that condition is waived.

> If a promisor prevents or hinders the occurrence or fulfillment of a condition to his or her duty of performance, the condition is excused. In other words, "the nonoccurrence or nonperformance of a condition is excused where the failure of the condition is caused by the party against whom the condition operates to impose a duty." Accordingly, the liability of the promisor is fixed regardless of the failure to fulfill the condition.

*Williston,* § 39:4. (citing *Rohde v. Massachusetts Mut. Life Ins. Co.,* 632 F.2d 667 (6th Cir.1980)). "The prevention doctrine does not require proof that the condition would have occurred 'but for' the wrongful conduct of the promisor; instead it only requires that the conduct have 'contributed materially' to the non-occurrence of the condition." *Moore Brothers,* 207 F.3d at 725. "Whether interference by one party

to a contract amounts to prevention so as to excuse performance by the other party and constitute a breach by the interfering party is a question of fact to be decided by the jury under all of the proved facts and circumstances." *Williston*, § 39:3.

[¶ 16.] Because this is a summary judgment under review, the question then is whether there are genuine issues of material fact whether Coss contributed materially to the failure of the condition. According to Grodahl's affidavit, one of Ford's requirements for transfer of the franchise was that the dealership be managed and operated by a person who could run the business, on site, on a day-to-day basis. That person had to demonstrate, to Ford's satisfaction, the ability to manage a dealership successfully. That person also had to have a substantial ownership interest in the business. According to Grodahl, Ford indicated that Coss was not acceptable or qualified for these purposes. Therefore, to satisfy the agreement's conditions precedent, it was reasonably necessary for Coss to locate a manager/co-owner who could meet Ford's requirement.

[¶ 17.] Although the trial court did not believe that Coss could rely on the Goodrich co-ownership arrangement to satisfy the condition precedent, that manager/co-owner contingency was envisioned by the agreement. Even before the agreement's execution, the parties were aware that Ford would require someone other than Coss to be the on-site manager. Consequently, in October 1999, Coss identified Goodrich as a potential co-owner and manager. In fact, Coss produced an October 25, 1999 letter from Coss's attorney to Goodrich outlining the potential co-owner relationship between Coss and Goodrich. That October letter emphasized that the

"entire series of transactions [was] all contingent on Ford approving the transfer of the franchise." At that time, Coss proposed that he and Goodrich would each own a 50% interest in the business, and each would contribute $500,000 toward its initial capitalization.

[¶ 18.] However, following the execution of the agreement, Ben Waite, a Ford District Representative, advised Grodahl that Ford would not approve the ownership arrangement expressed in the October letter to Goodrich. Waite stated that one of the owners had to have a majority interest in the business. Pursuant to this requirement, Coss revised the plan so he would be the majority owner with the 50.1% interest in the business.

[¶ 19.] However, Waite also advised Grodahl that Ford required an initial capitalization of $1.476 million instead of the contemplated $1 million. According to Grodahl, even after this added capitalization requirement, Coss continued to work towards the consummation of the transaction and was willing to satisfy that requirement. Coss established a new South Dakota corporation called "21st Century Motor Company, Inc." to operate the business. Coss also submitted his completed personal and financial information. Waite later advised Grodahl that the information provided was sufficient for Ford's purposes.

[¶ 20.] Ultimately, however, Coss asserts that he could not comply with all of Ford's requirements for the franchise transfer. According to the Grodahl affidavit, "Ford imposed requirements relating to ownership and capitalization that Mark Goodrich and Lawrence Coss were unable to meet to Ford's satisfaction." [3] Although there was no written rejection from Ford,

---

**3.** The record suggests there may have been some problem between Coss and Goodrich finalizing their agreement.

Grodahl's affidavit asserted that Waite had verbally advised him of the requirements from which Ford would not deviate. The alleged fact that Coss, working with Goodrich, could not meet these requirements, led Coss to the conclusion that the conditions could not be met. We believe that these alleged facts were sufficient to create genuine issues of dispute whether Coss spent sufficient time, energy, and expense to satisfy the condition precedent. Under those circumstances, a trier of fact must determine whether Coss's conduct contributed materially to the failure to obtain Ford's approval.

[¶ 21.] Johnson, however, argues that the Grodahl affidavit and attorney letter were inadmissible parol evidence. Johnson relies on SDCL 53–8–5 [4] and *Stromberg v. Smith*, 423 N.W.2d 107 (Minn.Ct.App.1988). Under those authorities, parol evidence cannot be used to show the substance of the parties' agreement absent an ambiguity. However, in this case, Grodahl's affidavit and the letter were not offered to establish or change the substance of the agreement. Instead, they were offered to demonstrate Coss's conduct relating to the franchise transfer after execution of the contract. Such conduct occurring after the execution of a contract is not excluded by the parol evidence rule. *Hofeldt v. Mehling*, 2003 SD 25, ¶ 11, 658 N.W.2d 783, 787.

[¶ 22.] Johnson finally argues that Coss's failure to deposit $100,000 into an escrow account, as required by paragraph 9 of the agreement, demonstrates Coss's abandonment of the contract from the very beginning. However, Coss submitted evidence indicating that a check for that amount was outstanding. Moreover, even if there was a total failure to tender $100,000, that failure was only some evidence of Coss's abandonment of the contract, and Grodahl's affidavit raised other facts indicating that Coss did not intend to abandon the contract. Therefore, Coss's showing was sufficient to preclude summary judgment. Any alleged abandonment must ultimately be determined by trial.

[¶ 23.] Because Coss raised disputed issues of material fact concerning the cause of the failure of the condition precedent, we reverse the summary judgment and remand for further proceedings.

[¶ 24.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.

---

4. SDCL 53–8–5 provides:
   The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.