# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2572
_____

Shaunta Hudson

*Plaintiff - Appellee*

v.

United Systems of Arkansas, Inc.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: January 15, 2013
Filed:  March 7, 2013
_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.
_____

MURPHY, Circuit Judge.

Shaunta Hudson sued United Systems of Arkansas, Inc., for sex and disability discrimination after she was terminated in June 2009.  Hudson prevailed on both claims at a jury trial and was awarded approximately $180,000 in damages, including

$100,000 for mental anguish.  United Systems appeals the district court's[1] denial of its post trial motions for judgment as a matter of law and for remittitur of the mental anguish damages.  We affirm.

I.

On reviewing the denial of a motion for judgment as a matter of law, we look at the facts in the light most favorable to the verdict and grant all reasonable inferences in favor of the non moving party.  Conseco Fin. Serv. Corp. v. N. Am. Mortg. Co., 381 F.3d 811, 818 (8th Cir. 2004).

In 2003 Hudson began working for United Systems, a small printing company in Little Rock, Arkansas.  She was initially hired as an accountant, but over time she advanced and in 2008 she was promoted to controller.  In this new position Hudson was one of four executive employees supervised by the owner and president of United Systems, Glenn Petkovsek.  Hudson, who is African American, was the only woman among the four executive employees.

At the time Hudson was hired in 2003, she advised the company that she had a serious medical condition which would require ongoing monitoring and treatment. Complications from a partial hysterectomy had left her with a pelvic mass that swelled progressively over time, causing severe discomfort and limiting her ability to sit or stand.  As a result she would have to take periodic short leaves to have the mass surgically drained of fluid.  This would involve a brief surgery to insert catheter tubes and another to remove the tubes after swelling had abated.  The draining process was required every few months and resulted in a few days of absence from work.

---

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

-2-

Hudson underwent surgery to drain her pelvic mass several times during her tenure at United Systems. Each time she followed the same procedure for notifying the company that she would be taking leave. When she had a scheduled appointment, she would tell her supervisor, fill out a form, and have the form signed in advance. If she needed to take leave unexpectedly, she called the front desk and informed whoever was answering the phone; she left a message if no one answered. Petkovsek would then receive a message from the front desk notifying him that Hudson was to be absent. This was the same type of leave notice given by all employees of United Systems, including the other executive employees.

The last time Hudson underwent surgery on her pelvic mass was in May 2009. As usual she advised the company in advance that she had scheduled an appointment for surgery. When she arrived for the surgery, however, Hudson learned that the mass had swollen more than expected and would take longer than usual to drain. This time the catheter tubes would need to stay in for days, possibly weeks. Although she suffered some discomfort, Hudson was able to return to United Systems for the next few weeks with reduced hours. The tubes were then removed in a surgery over Memorial Day weekend. Hudson intended to return to work the following Tuesday but could not when an infection developed following the surgery. Hudson was absent from work on Tuesday, Wednesday, and Thursday that week. Each day, she called in and spoke with someone at the front desk who was expected to relay the message to Petkovsek. Hudson finally returned to work on Friday, June 4.

On the morning Hudson returned to work, Petkovsek confronted her in her office, demanding to know why she had not called him on his cell phone to inform him personally that she would be out of the office that week. Hudson responded that she had not known she was required to call him personally. An argument ensued, and Petkovsek stood up and began pointing in Hudson's face. When Hudson rose, Petkovsek ordered her to "sit down, little girl." She did not, and Petkovsek grew irate and ordered her to "get out," repeating the phrase several times. Hudson understood this to mean she was fired. She left the office and went home. When she returned the

next day to gather her possessions, she found that the key code had been changed and another worker told her she was not allowed in the building. Petkovsek called Hudson a few days later and asked her to come to United Systems for a meeting with him. At the meeting he explained that he felt Hudson was unable to perform her regular duties due to her "health issues and personal issues," but that he would allow her to rejoin the company if she took a position with reduced hours and pay. Hudson did not accept Petkovsek's offer.

After filing a complaint with the EEOC and receiving her right to sue, see 42 U.S.C. § 2000e-5 (2006), Hudson filed this action in the district court. Hudson alleged claims of sex discrimination, sexual harassment, race discrimination, and disability discrimination under federal law as well as parallel claims under Arkansas law. Her sexual harassment and race discrimination claims were dismissed on summary judgment, but her sex and disability discrimination claims proceeded to a jury trial. Hudson prevailed on both remaining claims under federal and state law, and the jury awarded her compensatory damages of $179,362. The award included $100,000 for "other damages . . . such as mental anguish."

United Systems filed post trial motions for judgment as a matter of law and for remittitur of the mental anguish damages. The district court denied both motions and entered judgment for Hudson. United Systems now appeals the denial of those motions, arguing that there was insufficient evidence to support either the verdict or the award of mental anguish damages.

## II.

We review the denial of a motion for judgment as a matter of law de novo, "applying the same standard as the district court." Emmenegger v. Bull Moose Tube Co., 324 F.3d 616, 619 (8th Cir. 2003). The motion should be granted only if "a reasonable jury would not have [had] a legally sufficient basis to find for [the non moving] party." Fed. R. Civ. P. 50(a)(1). In this review, we are to take the facts in

-4-

the light most favorable to Hudson and grant all reasonable inferences in her favor. Conseco, 381 F.3d at 818. Although we take the record as a whole, we are to "disregard all evidence favorable to the moving party that the jury [was] not required to believe." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000). Thus, evidence that was favorable to United Systems should be credited only if it was "uncontradicted and unimpeached," and only "to the extent that [it came] from disinterested witnesses." Id. (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2259 (2d ed. 1995)).

Hudson's sex discrimination claims under Title VII, 42 U.S.C. § 2000e-2, and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-107, are analyzed under the same framework. See Gibson v. Am. Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012). Where a plaintiff presents indirect evidence of discrimination, the Supreme Court's opinion in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), "established an allocation of the burden of production and an order for the presentation of proof." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). In such cases the plaintiff's "presentation of a prima facie case creates a legal presumption of unlawful discrimination." Ryther v. Kare 11, 108 F.3d 832, 836 (8th Cir. 1997) (en banc). That presumption "places an obligation upon the employer to produce evidence of a legitimate, nondiscriminatory reason for the plaintiff's discharge." Id. This is a burden "of production, not persuasion," and it requires no credibility assessment. Reeves, 530 U.S. at 142 (citing Hicks, 509 U.S. at 509). If an employer carries its burden, "the legal presumption of unlawful discrimination 'drops out of the picture.'" Ryther, 108 F.3d at 836 (quoting Hicks, 509 U.S. at 511) (emphasis in original).

The plaintiff then has the "'full and fair opportunity to demonstrate,' through presentation of [her] own case and through cross-examination of the defendant's witnesses" that she was discriminated against on the basis of her sex. Hicks, 509 U.S. at 507–08 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)). The trier of fact "proceeds to decide the ultimate question: whether plaintiff has

proved 'that the defendant intentionally discriminated against [her]'" because of her sex. Id. at 511 (quoting Burdine, 450 U.S. at 253). It is the plaintiff's burden to "persuade the jury, from all the facts and circumstances, that the employment decision was based upon intentional discrimination." Ryther, 108 F.3d at 837–38 (citing Hicks, 509 U.S. at 511 n.4). We have further explained that "[i]ntentional discrimination vel non is like any other ultimate question of fact: either the evidence is sufficient to support a finding that the fact has been proven, or it is not." Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1335 (8th Cir. 1996).

United Systems argues that it was entitled to judgment as a matter of law on Hudson's sex discrimination claims because it articulated a legitimate, nondiscriminatory reason for her termination which she failed to disprove. Although the company denied at trial that Hudson had in fact been terminated, Petkovsek testified that she had violated his "cell phone policy" which required all executive employees to telephone him personally when calling in sick. Petkovsek also testified that he had explained that policy to Hudson months before her termination. Finally, Petkovsek testified that he had told Hudson to "get out" of her office because she "copped an attitude" and he thought she was calling him a racist. On appeal, United Systems contends that this testimony establishes that Hudson was fired for "insubordination" rather than for her sex and that Petkovsek's account of the firing was "essentially undisputed."

We conclude that a legally sufficient basis existed for a reasonable jury to determine that Hudson had made a showing that she had been discriminated against by her employer. See Conseco, 381 F.3d at 818. Petkovsek's account did not go "essentially undisputed," as he claims on appeal. Three current or former executive employees testified that they had never heard of Petkovsek's alleged cell phone policy. In response to Petkovsek's testimony that he had told Hudson about the cell phone policy months before her termination, a portion of his pretrial deposition was introduced in which he stated that he believed he first told her about it the day she was fired. Hudson also produced evidence that Petkovsek "belittle[d] women employees

all of the time," talked down to them, and called them "girl" or "little girl." Once he told Hudson that she "g[a]ve good phone," which she took to be a reference to oral sex. Finally, Hudson testified that immediately before telling her to "get out" of her office during their confrontation, Petkovsek ordered her to "sit down, little girl." The jury was not required to believe Petkovsek's contradicted and impeached testimony, Reeves, 530 U.S. at 151, or to accept United Systems' proffered reasons for Hudson's dismissal. Hudson's evidence met her burden of "persuad[ing] the jury, from all the facts and circumstances," that her termination was "based upon intentional discrimination." Ryther, 108 F.3d at 837–38 (citing Hicks, 509 U.S. at 511 n.4). United Systems was thus not entitled to judgment as a matter of law.

Since we conclude that the district court did not err in denying United Systems' motion for judgment as a matter of law on Hudson's sex discrimination claims, we need not address the denial of the motion on her disability discrimination claims. The damages award was the same for each claim, and United Systems concedes that its appeal of the disability discrimination claims is moot if the sex discrimination claims are affirmed.

III.

We turn next to United Systems' motion for remittitur. Denial of a motion for remittitur is reviewed for a manifest abuse of discretion. Sheriff v. Midwest Health Partners, P.C., 619 F.3d 923, 931 (8th Cir. 2010). Remittitur is appropriate "only when the verdict is so grossly excessive as to shock the conscience of the court." Id. (citation omitted). A verdict is considered grossly excessive when "there is plain injustice or a monstrous or shocking result." Eich v. Bd. of Regents for Cent. Mo. State Univ., 350 F.3d 752, 763 (8th Cir. 2003) (internal quotation marks omitted).

United Systems argues that the district court should have ordered remittitur because the evidence of Hudson's mental anguish was insufficient to support an award of $100,000. We disagree. United Systems largely relies on Forshee v. Waterloo

Industries, Inc., 178 F.3d 527, 531 (8th Cir. 1999), but that case is not on point. In Forshee, we were faced with the question of whether emotional distress damages should have been submitted to the jury at all. Id. at 531. Here, United Systems did not challenge the submission of mental anguish damages to the jury, but only filed a motion for remittitur of the damages after the jury made its award. Remittitur is a device for reviewing the amount of a damages award, not whether there was a basis for any award at all. See, e.g., Eich, 350 F.3d at 763–64.

Awards for pain and suffering are often "highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms." Frazier v. Iowa Beef Processors, Inc., 200 F.3d 1190, 1193 (8th Cir. 2000). In previous cases, for example, we have upheld jury awards of $200,000 for a sexual harassment claim; $50,000, $100,000, and $125,000 for discrimination claims under Title VII; and $165,000 for a disability discrimination claim under the Americans with Disabilities Act. Eich, 350 F.3d at 764 (collecting cases). Considering this precedent and the record made in this case, we cannot conclude that the award of $100,000 to Hudson was monstrous, shocking, or grossly excessive. We conclude that the district court did not manifestly abuse its discretion in denying the motion for remittitur.

IV.

Because the district court did not err in denying judgment as a matter of law or manifestly abuse its discretion in denying remittitur, the judgment is affirmed.

_____