# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4070/16-4210

_____

Laura Dziadek

*Plaintiff - Appellant*

v.

The Charter Oak Fire Insurance Company

*Defendant - Appellee*

_____

Appeals from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: April 4, 2017
Filed: August 15, 2017

_____

Before WOLLMAN, RILEY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury found The Charter Oak Fire Insurance Company liable for breach of contract and deceit for its handling of Laura Dziadek's underinsured-motorist claim. After partly granting judgment as a matter of law, the district court[1] approved some

---

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

of the compensatory damages and all of the punitive damages. ***Dziadek v. Charter Oak Fire Ins. Co.***, 213 F. Supp. 3d 1150, 1162 (D.S.D. 2016). Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Charter Oak issued a Commercial Insurance Policy to Billion Empire Motors, Inc., an auto dealership in Sioux Falls. Billion loaned a car to Lori Peterson. On September 22, 2008, Peterson lost control of the car, crashing in a ravine. Laura Dziadek, a passenger, was severely injured. She hired Zimmer Duncan & Cole (ZDC) to represent her.

In early 2009, Billion's insurance agent notified Charter Oak about the accident. Faith Styles was Charter Oak's claims representative. She learned Peterson was insured by Progressive but only for $100,000 liability coverage. On February 6, Styles spoke with ZDC attorney Jeffery A. Cole about coverage for Dziadek. According to Cole, she said Dziadek had no coverage under the Charter Policy. Days later, she wrote Cole a letter stating "no coverage for your client [Dziadek] exists under this policy."

On February 18, Cole sent Styles a letter requesting the declaration sheet and "a true and correct copy" of the Policy. She sent back the declarations sheet and excerpts of the Policy. Styles did not send the entire Policy. In the excerpts Styles sent, Dziadek was not an "insured."

On February 24, Progressive offered Peterson's $100,000 limit in exchange for a full release from Dziadek. Cole declined because Dziadek's medical bills exceeded $100,000 and he hoped to collect more from Peterson and other alleged tortfeasors. Over the next two years, ZDC pursued claims against Peterson, the State of South Dakota, various state officials, and a signage company.

In June 2011, ZDC attorney Daniel K. Brendtro reviewed the Charter Policy to see if Dziadek was covered. He noticed the UIM coverage and told a paralegal to get a copy of the entire Policy from Styles. In response, Styles asked the paralegal to request specific parts of the Policy, asserting it could be over 2,000 pages. The paralegal narrowed the request. Styles did not respond. The following week, the paralegal repeated the request. On July 21, Styles sent a full copy of the Policy.

After reviewing the entire Policy, ZDC wrote Styles for confirmation that Dziadek was an insured with UIM coverage. After 50 days with no response, Dziadek filed this lawsuit in September 2011, alleging breach of contract, deceit, and bad faith. Charter Oak's answer admitted the existence of UIM and medical-payments coverage. Charter Oak also agreed to Dziadek's settlement with Peterson and Progressive for the $100,000 limit. On February 21, 2012, Charter Oak paid $900,000 in UIM coverage (the $1 million limit minus $100,000 from the Progressive policy), plus $5,000 in medical-payments coverage.

The jury found Charter Oak liable for deceit and breach of contract. It awarded Dziadek $250,000 for additional legal fees; $500,000 of "other harm . . . including mental and emotional harm"; and prejudgment interest. In phase two of the trial, the jury awarded $2.75 million in punitive damages. Charter Oak and Dziadek both appeal.

## II.

Charter Oak argues that Dziadek's deceit and breach of contract claims fail as a matter of law. This court reviews de novo the denial of a motion for judgment as a matter of law, taking all facts and reasonable inferences most favorably to Dziadek. *See **Hudson v. United Sys. of Ark., Inc.***, 709 F.3d 700, 702 (8th Cir. 2013).

A.

Charter Oak believes that the "independent duty rule" bars Dziadek's deceit claim because "there is no independent tort claim for the failure to perform a contract duty that would be unenforceable separate from and independent of the contract." In South Dakota, the tort of deceit is:

(1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
(2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;
(3) The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or
(4) A promise made without any intention of performing.

**S.D. Codified Laws § 20-10-2**. "[A]n omission to perform a contract obligation is never a tort, but . . . that . . . breach of legal duty upon which a tort is based may arise out of a relation or state of facts created by contract." *Karas v. Am. Family Ins. Co.*, 33 F.3d 995, 998 (8th Cir. 1994), *citing* **Smith v. Weber**, 16 N.W.2d 537, 539 (S.D. 1944) (internal quotation marks omitted).

Although Dziadek's claim may "grow out of" a contract, "[t]he fact that there existed a contract between the plaintiffs and the defendant would not immune the latter from the penalty that is ordinarily visited upon tort-feasors." *See* **Smith**, 16 N.W.2d at 539. "While the matters complained of . . . [may have] had their origin in a contract, the gist of the action is for alleged wrongful and tortious acts of defendant." **Karas**, 33 F.3d at 998, *citing* **Smith**, 16 N.W.2d at 539. Charter Oak is not "immune . . . from the penalty that is ordinarily visited upon tort-feasors" because "there existed a contract" with Dziadek. *See* **Smith**, 16 N.W.2d at 539**.** *See also* **Biegler v. Am. Family Mut. Ins. Co.**, 621 N.W.2d 592, 602-04 (S.D. 2001) (upholding a deceit verdict against an insurer for failure to provide coverage). The

independent-duty rule does not bar Dziadek's deceit claim. *Cf. **Ochs v. Northwestern Nat. Life Ins. Co.***, 254 N.W.2d 163, 167 (S.D. 1977) (explaining that if a case involves "multiple claims" under Rule 54(b), "the ultimate determination of multiplicity of claims must rest in every case on whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced").

Charter Oak believes there was insufficient evidence of deceit. *Biegler* found sufficient evidence of deceit where:

> American Family had sufficient information to know it had a duty to defend and it failed to impart this very important information to Biegler. Based on what a reasonable insurance company should understand, American Family's initial denial was a fact that one would realize would be relied upon by another to their detriment. Knowing this, American Family failed to advise Biegler it had a duty to defend . . . and American Family also failed to advise Biegler it did not consider Biegler's tender as a proper tender. In sum, American Family tried to "sandbag" Biegler by not conveying important information to Biegler.

*Biegler*, 621 N.W.2d at 602. Here, ZDC asked Styles whether any coverage existed. Styles said no coverage existed. ZDC asked Styles twice for a copy of the entire Policy. Styles refused, first sending excerpts where Dziadek was not an insured, then claiming the Policy could be over 2,000 pages—it was actually about 200. As the district court found, there are sufficient facts to find "Charter Oak did not simply fail to disclose the existence of $900,000 of UIM coverage available to Dziadek, but actively deceived Dziadek and her attorney into believing that there was no such coverage." *Dziadek*, 213 F. Supp. 3d at 1160.

Charter Oak says that "an extra-contractual remedy for 'bad faith' [is] the single, narrow exception to the 'independent duty' doctrine." South Dakota

-5-

recognizes a tort claim for bad faith in insurance cases. *See* ***Champion v. United States Fid. & Guar. Co.***, 399 N.W.2d 320, 322 (S.D. 1987) ("[W]e believe the correct judicial path to be that which allows a cause of action against an insurance company for bad faith failure to pay a claim."); ***Paulsen v. Ability Ins. Co.***, 906 F. Supp. 2d 909, 913 (D.S.D. 2012) (explaining that the South Dakota Supreme Court "effectively creat[ed] . . . out of necessity" a tort for breach of the implied covenant of good faith by an insurer). But no authority says bad faith is the *only* available remedy. Attempting to distinguish the deceit claim in *Biegler*, Charter Oak says that claim "was essentially . . . an insurance 'bad faith' claim." But Charter Oak cannot re-label as "essentially . . . bad faith" what *Biegler* declared to be "deceit." *See* ***Biegler***, 621 N.W.2d at 604 (upholding the "finding of deceit"). In addition to bad faith, deceit is a viable claim against an insurance company "resulting from a breach of the contract of insurance." *See* ***id.*** at 597, 601-03.

Charter Oak claims that if it did deceive Dziadek, there is no harm. The jury awarded Dziadek $250,000 based on attorney's fees she would have saved if Charter Oak had not deceived her. Charter Oak cites no authority that payment for additional attorney's fees is not "any damage" caused by deceit. *See* **S.D. Codified Law § 20-10-1** ("One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."). At trial, Cole testified that if Charter Oak had disclosed coverage in 2009, he would not have charged Dziadek a third of the total recovery, but only $10,000 for the minimal work to formalize a UIM claim. The jury was entitled to believe Cole's testimony and find that Charter Oak's deceit harmed Dziadek.

B.

Charter Oak argues Dziadek's breach-of-contract claim fails as a matter of law. To prove breach of contract, Dziadek must show "(1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages." *See* ***Bowes Constr., Inc. v. South***

***Dakota Dep't of Transp.***, 793 N.W.2d 36, 43 (S.D. 2010). The jury found that Charter Oak breached the contract because it prevented Dziadek from formalizing her UIM claim on December 15, 2009.

Charter Oak believes Dziadek inappropriately relies on the prevention doctrine: "if a party to a contract hinders the occurrence of a condition precedent, that condition is waived." *See* ***Johnson v. Coss***, 667 N.W.2d 701, 706 (S.D. 2003). Charter Oak thinks *Johnson* holds that the prevention doctrine applies only if it invoked Dziadek's non-performance of conditions precedent "as a basis" for refusing to perform. *Johnson* has no such requirement. "The prevention doctrine does not require proof that the condition would have occurred 'but for' the wrongful conduct of the promisor; instead it only requires that the conduct have 'contributed materially' to the non-occurrence of the condition." ***Id.*** "Whether interference by one party to a contract amounts to prevention so as to excuse performance by the other party and constitute a breach by the interfering party is a question of fact to be decided by the jury under all of the proved facts and circumstances." ***Id.*** at 706-07. There is sufficient evidence for the jury's finding that Charter Oak's actions "contributed materially" to Dziadek's failure to formalize her claim in 2009.

Charter Oak asserts there was no breach because Dziadek could not have formalized her UIM claim until October 2011, the date she submitted medical records. As the district court found, this argument

> ignores the jury's finding that Charter Oak prevented Dziadek from formalizing her UIM claim earlier. Having been deceived by Charter Oak into thinking there was no coverage under the Policy, neither Cole nor Dziadek would have any reason to submit medical records to Charter Oak in 2009 or 2010.

***Dziadek***, 213 F. Supp. 3d at 1164. Charter Oak counters citing Cole's testimony that he made a "mistake" by not pursuing UIM coverage earlier. But this court should

"disregard all evidence favorable to the moving party that the jury was not required to believe." *See **Hudson***, 709 F.3d at 703 (internal citation omitted). Here, there was sufficient evidence that Charter Oak's acts "contributed materially" to a two-year delay in formalizing Dziadek's UIM claim. *See **Johnson***, 667 N.W.2d at 706-07.

Charter Oak argues that because Dziadek sued other non-motorist (alleged) tortfeasors, she was "obligated to resolve their liability before she could establish a claim for UIM benefits." Charter Oak relies on *Farmland Ins. Cos. v. Heitman*, 498 N.W.2d 620, 625 (S.D. 1993): "[T]he maximum liability of the insurer with respect to underinsured motorist coverage is the lesser of the difference between the limits of UIM coverage set out in the policy . . . and the amount which has been paid or will be paid to the insured by or for the tortfeasor or tortfeasors . . . ." But *Heitman* does not address the liability of *non-motorist* tortfeasors. Charter Oak argues that South Dakota law "requires UIM claimants to first exhaust all potential underlying insurance *(at least that of the driver and owner of an underinsured vehicle)* before seeking UIM coverage." (emphasis added). As the district court ruled, the South Dakota Supreme Court would not make the leap from "the driver and owner of an underinsured vehicle" to "all potential underlying insurance." *See **Dziadek***, 213 F. Supp. 3d at 1165-67. Dziadek's UIM claim against Charter Oak need not wait until resolution of claims against all other non-motorist tortfeasors.

Charter Oak claims it did not breach the contract because it eventually paid the full UIM benefits. The jury found that Charter Oak's breach prevented Dziadek from submitting her UIM claim sooner and awarded "interest on UIM monies" from December 15, 2009. Under South Dakota law, the jury was entitled to award Dziadek any "detriment caused by the breach," including interest. *See* **S.D. Codified Laws § 21-2-2** ("The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation *with interest thereon*." (emphasis added)).

III.

A.

The district court nullified the jury's $500,000 award for mental and emotional harm from her deceit claim. In the cross-appeal, Dziadek disagrees, invoking South Dakota's general statute on tort damages: "For the breach of an obligation not arising from contract, the measure of damages, except where expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." **§ 21-3-1**.

The district court relied on *Stabler v. First State Bank of Roscoe*, 865 N.W.2d 466, 479 (S.D. 2015). There, the Supreme Court denied emotional-distress damages on a fraud claim because plaintiffs did not prove either intentional or negligent infliction of emotional distress. *Id.* *Stabler* acknowledged that the court had previously "recognized emotional distress damages in tort actions." *See id.*, *citing* ***Fix v. First State Bank of Roscoe***, 807 N.W.2d 612, 617 (S.D. 2011). But *Stabler* held that *Fix* did not say that a plaintiff asserting fraud can recover emotional distress damages without a special showing. *See id.* ("We have not previously held that plaintiffs may recover emotional distress damages from defendants when asserting fraud."). Under *Stabler*, a plaintiff must prove intentional or negligent infliction of emotional distress to recover for mental or emotional harm on a fraud claim. *See **id.***

Dziadek argues that "all the detriment" in § 21-3-1 contradicts *Stabler*'s limit on damages for mental and emotional harm. A federal court sitting in diversity interprets state law and does not contravene clear directives from state supreme courts. *See **Karas***, 33 F.3d at 1000. The *Stabler* court—aware of both § 21-3-1 and *Fix*—did not hold that "all the detriment" includes mental and emotional damages for fraud claims. The district court correctly deferred to *Stabler*: Dziadek must show intentional or negligent infliction of emotional distress to recover for mental or

emotional harm on her deceit claim. *See **Rist v. Karlen***, 241 N.W.2d 717, 719 n.* (S.D. 1976) (explaining deceit is a "species of fraud" in South Dakota).

Dziadek believes the district court should have conformed her pleadings to the evidence, which she claims is sufficient to find negligent infliction of emotional distress. But the jury never found that Dziadek suffered a physical manifestation of distress from Charter Oak's deceit. *See **Mayrott v. First Nat. Bank of Eden***, 624 N.W.2d 94, 104 (S.D. 2001) ("We have repeatedly held that negligent infliction of emotional distress requires manifestation of physical symptoms." (internal citation omitted)). Dziadek neither objected to the final damages instructions nor submitted proposed instructions requesting a finding on negligent infliction of emotional distress. The district court did not err by failing to conform Dziadek's pleadings, and properly nullified the award for mental and emotional harm.

## B.

Dziadek argues that South Dakota § 54-3-5 requires a 15% interest rate on the $900,000 payment of the UIM claim. The district court applied the 10% interest in § 21-1-13.1. The Supreme Court of South Dakota consistently applies § 21-1-13.1 in contract cases. *See, e.g.*, ***U.S. Lumber, Inc. v. Fisher***, 523 N.W.2d 87, 91 (S.D. 1994) ("SDCL § 21-1-13.1 is very specific on awarding prejudgment interest in contract actions."). Dziadek cites no case since § 21-1-13.1 became effective that applies § 54-3-5 to interest in a contract case. The district court correctly applied § 21-1-13.1.

## IV.

Charter Oak asserts that the evidence does not support the award of punitive damages. This court reviews de novo the decision to instruct the jury on punitive

-10-

damages.  *Carpenter v. Auto. Club Interinsurance Exch.*, 58 F.3d 1296, 1304 (8th Cir. 1995).

South Dakota Law § 21–3–2 authorizes punitive damages when there is evidence of "oppression, fraud, or malice."  "While our punitive damages statute (SDCL 21–3–2) does not allow punitive damages for breach of contract, it does permit them in the case of a tort arising independent of the contract obligation including an action for deceit."  *Biegler*, 621 N.W.2d at 604.  *Cf. Thu v. Am. Fam. Ins. Co.*, 292 N.W.2d 109, 110-11 (S.D. 1980) ("Punitive damages are not recoverable in breach of contract actions.  Plaintiff's cause of action was nothing more or less than a claim based upon appellant's refusal to pay benefits under the terms of the insurance policy." (citation omitted)).

The evidence supporting Dziadek's deceit claim also supports her punitives case.  *See Biegler*, 621 N.W.2d at 605 ("As we have already held, the evidence supports a jury finding of deceit.  This alone is a sufficient basis upon which the jury's award of punitive damages is justified.").  The district court found:

> Styles was the agent acting for Charter Oak in deceiving Dziadek into believing there to be no coverage for her under the Policy in 2009. When Styles deceived Cole and Dziadek, Styles knew that Dziadek had been seriously injured . . . .  Styles's conduct was indifferent or reckless in disregard of Dziadek's health or safety.
> . . . .
> Despite the fact that Dziadek qualified as an insured under the Policy's UIM provision, Styles in 2009 told Cole there was no coverage for Dziadek orally and then in writing.  She then further misled Cole by withholding the UIM provision and sending him the part of the policy under which Dziadek was not covered or defined as an insured.  Even two years later in 2011, Styles withheld the Policy from Dziadek's counsel by asserting that it was some 2,000 pages, when it was about

200. She delayed sending the UIM policy provision in 2011 when they were specifically requested.

*Dziadek*, 213 F. Supp. 3d at 1170-72.

Charter Oak cites *Bierle v. Liberty Mutual Insurance Co.*, 992 F.2d 873, 876 (8th Cir. 1993), affirming the nullification of punitive damages in an insurance bad faith case. In *Bierle*, however, "there was no evidence that [the claim supervisor] intentionally misled the Bierles about the coverage." *Id.* at 874-75. Here: "A reasonable jury could conclude that Charter Oak in 2009 willfully misled Dziadek and Cole about the existence of UIM coverage with the intent to avoid having to pay Dziadek the $900,000." *Dziadek*, 213 F. Supp. 3d at 1162. On these facts, the district court did not err by instructing on punitive damages.

Charter Oak argues that the district court erred in calculating the punitives-to-compensatory ratio. As part of her compensatory damages, Dziadek received interest on the $900,000 UIM payment. South Dakota's prejudgment interest statute is compensatory. *See Anderson v. Aesoph*, 697 N.W.2d 25, 33 (S.D. 2005) ("Prejudgment interest has as its purpose to compensate an injured party for the wrongful detention of money owed."); *South Dakota Bldg. Auth. v. Geiger-Berger Assocs.*, 414 N.W.2d 15, 19 (S.D. 1987) ("The prejudgment interest award seeks to compensate the injured party for this wrongful detention of money owed."). The district court correctly found that interest on the $900,000 UIM is compensatory.

Charter Oak believes that the jury's award of $2.75 million in punitive damages is excessive under South Dakota law and the Due Process Clause of the Fourteenth Amendment. The Supreme Court has three "guideposts" for courts to consider when reviewing a punitive damages award: "(1) the degree of reprehensibility of defendant's misconduct; (2) the disparity between the actual or potential harm

-12-

suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and civil penalties authorized or imposed in comparable cases." *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003). South Dakota law adds the following factors: "the nature and enormity of the wrong, the intent of the wrongdoer, the wrongdoer's financial condition, and all of the circumstances attendant to the wrongdoer's actions." *See Roth v. Farner-Bocken Co.*, 667 N.W.2d 651, 666 (S.D. 2003). The district court adequately addressed all the factors. *See Dziadek*, 213 F. Supp. 3d at 1170-73.[2]

In particular, the Supreme Court—"reluctant to identify concrete constitutional limits on the ratio between harm . . . and the punitive damages award"—has stated, "Single digit multipliers are more likely to comport with due process." *See Campbell*, 538 U.S. at 424-25. Here, the total of $250,000 plus $387,511.70 in compensatory interest is $637,511.70. The punitives-to-compensatory ratio is 4.3 to 1—within the Supreme Court's single-digit rule. *See Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 758 F.3d 1051, 1061 (8th Cir. 2014) ("The Supreme Court has repeatedly intimated that a four-to-one ratio of [punitive damages to compensatory damages] is likely to survive any due process challenges . . . ." (alterations in original)). *See also Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1020-21 (8th Cir. 2008) (approving an 8 to 1 punitives-to-

---

[2]*Amici* argue that this court should use a lower market rate to split the interest into compensatory and punitive components. Because Charter Oak did not raise the argument before the district court, and raised it here only in a reply brief, this court need not address it. *See Menz v. Procter & Gamble Health Care Plan*, 520 F.3d 865, 868 (8th Cir. 2008) (finding arguments not raised before the district court are waived); *Barham v. Reliance Standard Life Ins. Co.*, 441 F.3d 581, 584 (8th Cir. 2006) ("As a general rule, we will not consider arguments raised for the first time in a reply brief.").

compensatory ratio where defendant engaged in "repeated trickery and deceit").  The jury's punitive damages award is not excessive.

* * * * * * *

The judgment of the district court is affirmed.

_____